### LEVI ALDRIGE *v.* THE STATE.

1. COMBAT. *Concealed weapon. Assault with intent to murder.*

　A person who enters a combat armed with a concealed deadly weapon may use it to protect his life, if his adversary, who struck the first blow, resorts to such a weapon, and will not be guilty of assault with intent to murder, unless he intended from the first to use the weapon if necessary to overcome his antagonist.

2. SAME. *Instructions. Omission of qualifications.*

The jury should not be instructed that they may convict the accused either of assault with intent to murder or of assault and battery, because he enters a combat armed with a dangerous weapon not exposed to view so as to put his adversary on his guard, and in the fight strikes him with it, intending to kill or injure him.

3. SAME. *Assault and battery. Inapplicable charge.*

If, being so instructed, the jury, under an indictment for assault with intent to commit murder, convict of assault and battery, this is erroneous, because the charge is calculated to confuse them by stating an inaccurate rule as to the higher offence, and improperly applying it to the lower one.

4. INSTRUCTIONS. *Principles. Application.*

After a party has obtained a correct statement of the law governing a point in the case, he has the right to an application of the principle to the facts in evidence, and a declaration from the court that these facts, if believed by the jury to be established, call for the application of the principle.

5. CONCEALED WEAPONS. *Pocket-knife. Self-defence.*

It is not unlawful to carry a pocket-knife, and no invidious deductions are to be drawn from the fact, unless the person has it in contemplation of a difficulty; and he may legally use such a weapon in necessary self-defence against a murderous assault when driven to it by the aggressions of his adversary.

APPEAL from the Circuit Court of Tippah County.

Hon. J. W. C. WATSON, Judge.

At the trial, under this indictment for an assault with intent to commit murder, the court, upon the evidence set forth in the opinion, gave the following, among other charges, for the State: (5) " In cases of mutual combat, if one party enters into the contest dangerously armed, and fights under an undue advantage, and kills his adversary, such killing will be murder; and, if the jury believe from the evidence that Levi Aldrige, the defendant, entered into a mutual fight with D. S. Thomas, having upon his person any dangerous weapon, and that such weapon was not exposed to view, so as to put Thomas upon his guard, and that in said fight he struck Thomas with said weapon, intending to kill or injure him, then the jury should find the defendant guilty as charged, or guilty of an assault, or assault and battery, as the evidence may warrant."

(9) " If the jury believe from the evidence that Thomas had

threatened Aldrige, who knew of such threats, and, knowing them, saw Thomas come to the door and call him out, and saw a knife in the left hand of Thomas, and saw him change the knife from his left to his right hand, and that, knowing these things, he willingly went into a difficulty with him, having a concealed knife himself, which he intended from the first to use if necessary in overcoming Thomas, and that, after angry words had passed between them, and mutual blows had been given, Aldrige cut him with his knife, intending to kill him or injure him, then the jury should find the accused guilty as charged, or guilty of an assault and battery, as the proof may justify." A like charge given for the State, omitting the circumstances of Thomas having and exhibiting a knife, concluded as follows : " If the jury believe from the evidence that Thomas threatened to take the life of Aldrige, and that such threats were communicated to Aldrige, who, with full knowledge that they had been made, entered into a difficulty with Thomas at his solicitation, having upon his person a knife, and that he intended to use said knife on Thomas if necessary to overcome him, then it will become the duty of the jury to return a verdict of guilty as charged, and the form of the verdict will be substantially as follows: ' We the jury find the defendant guilty as charged in the indictment.' "

At the request of the accused, the court gave, among others, the following instructions : (7) " In passing upon the case of the defendant, the jury should, looking to all the evidence in the case, put themselves in his place at the time of the alleged offence, and if, after considering all the facts in the proof preceding and at the time of the cutting, the jury believe that the defendant had reasonable grounds to believe that Thomas designed to kill him or do him some great personal injury, and there was imminent danger of such design being accomplished, they should find the defendant not guilty." (8) " What is meant by mutual combat, is where both parties are consenting to the difficulty or fight, and engage in it willingly." The following, among other charges, were asked by the defendant: (10) " What is meant by mutual combat is when both parties willingly and mutually engage in said combat ; and, if the jury believe from the evidence in this case,

that the defendant, Aldrige, was endeavoring all the time to avoid a difficulty with Thomas, and only engaged in it when driven to it by Thomas, and that Aldrige was acting only in self-defence, then they should find the defendant not guilty." This was marked "refused, because the law already fully charged." (12) "There is no law which prohibits any one from carrying a pocket-knife; and, unless the jury should believe from the evidence that the defendant had the pocket-knife, with which the wound was inflicted, for the purpose of using it in some contemplated difficulty with Thomas, then no criminality attaches to the defendant for having said pocket-knife in his possession; and, if they further believe from the evidence that the defendant only used his when driven to it by the aggression of Thomas, and in his own necessary self-defence from a murderous assault, then they should find the defendant not guilty." This was indorsed "refused."

The following instruction, asked by the defendant, was refused by the court, with this indorsement: "No. 7 given in lieu of this." (13) "If the jury believe from the evidence that Thomas had threatened to kill Aldrige, and that he knew of said threats having been made, and if they further believe that Thomas called Aldrige out and provoked a difficulty, and that Thomas was at the time armed with an open knife, or any other weapon likely to produce death, or with which great personal injury could be inflicted, and that Thomas made any hostile demonstrations towards Aldrige, then, under these circumstances, the defendant is to be judged by his actions, coupled with his knowledge of the threats which had been made against him by Thomas, and he is entitled to the benefit of his quickened apprehension of danger excited by this knowledge, and the fact that he interpreted the demonstrations of Thomas by the light of his previous declaration, that he would kill the defendant; and in determining whether or not there was apparent danger that Thomas would immediately put his threats into execution, the jury should not require of him the same cool judgment that they themselves can bring to bear upon the occurrences, but should put themselves as far as possible in his place, and judge whether the danger was apparent, or should have been considered apparent by a man so situated."

*T. Spight*, for the appellant.

Both in the assumption that there was a mutual combat, and in the omission of the qualification that the knife had been procured for that occasion, the fifth charge for the State is erroneous. *Long* v. *State*, 52 Miss. 23. This defect was not cured by other instructions. Although the verdict is for assault and battery only, this illegal charge must cause a reversal, because it applies to that as well as to the higher offence. Another error was committed. Instructions applying the law to the facts were improperly refused upon the novel ground that the abstract principles involved had been previously announced.

*T. C. Catchings*, Attorney General, for the State.

As the appellant was convicted only of assault and battery, the instructions did not injure him, and as the evidence sustains this verdict, it will not be reversed. If he had killed his aggressor, the homicide would not have been justifiable, and therefore the proof is sufficient to sustain the conviction of an assault and battery.

CHALMERS, C. J., delivered the opinion of the court.

The appellant was indicted for an assault with intent to murder one D. S. Thomas, and convicted of an assault and battery. The verdict is supported by the testimony of Thomas alone, that of all the other witnesses making out a case of self-defence. The difficulty occurred at a social gathering. The appellant, while engaged in the house in some innocent diversion, was called out by Thomas in an angry manner and accused of having circulated lies to his detriment. Angry words ensued, and presently Thomas, according to his own admissions, struck the appellant in the face. The blow was repeated; and at last the appellant cut Thomas with a pocket knife, which he drew from his pocket. Thomas states that he himself had no weapon, but six other witnesses testify that he not only had a drawn knife in his hand, but that he was striking at the appellant with it when himself stabbed. By the fifth instruction for the State the jury were told that, if the defendant entered into a mutual fight with Thomas having upon his person any danger-

ous weapon, and that such weapon was not exposed to view, so as to put Thomas upon his guard, and that in said fight he struck Thomas with said knife, intending to kill or injure him, then, the jury should find him guilty as charged, or guilty of an assault and battery, or of an assault only, as the facts may warrant.

This charge was improper, under the facts of the case, without some qualifications. A mutual combat is one into which both parties enter willingly, as the jury were informed by other charges given in the case. A man who is stricken with the fist may enter willingly into the combat, supposing that it is to be prosecuted without deadly weapons, but if in its progress his adversary resorts to such weapons, he may lawfully do the same, if it be necessary to protect his own life, and the fact that he had such weapon concealed on his person will not deprive him of this right, unless the jury believe from the evidence that he went into the fight intending from the first to resort to his weapon if it became necessary thereby to overcome his adversary. Other instructions given for the State contained this limitation of an original intention of resorting to the weapon in case of need, but the one under consideration does not. It broadly lays down the proposition, that any resort to an unexposed deadly weapon, in cases of mutual combat, will constitute murder in the event of death, though there was no previous intent of using the weapon, and though he who had brought on the combat by giving the first blow, had himself resorted to the use of such weapon. The injustice of such a rule is made manifest by the facts of this case. That Thomas provoked the difficulty both by words and blows is plain, even from his own testimony. He denied that he had a weapon, but that he did have one, and was about to use it, is shown by the testimony of several witnesses. If this be true, the appellant had the right to use any means necessary to preserve his own life, provided he had nothing to do with bringing on the fight save to strike when he was stricken, and entered into it with no intention of taking life with a weapon of which his adversary had no warning.

It is suggested by the Attorney General that, though the instruction be wrong, it will not constitute error, because of the

fact that the appellant was acquitted of the charge of assault with intent to murder, and convicted only of an assault and battery, and that therefore the laying down of an erroneous test as to the higher crime will not vitiate a conviction of the lower, as to which no improper test was prescribed. But it will be observed that the charge concludes by instructing the jury that they will find the accused guilty as charged, or guilty of an assault and battery, or of an assault only, as the evidence may warrant. It is erroneous therefore in a double aspect, both as laying down an improper rule as to the higher offence, and as improperly applying this rule to the lower. It was well calculated to mislead the jury in the consideration of both aspects of the crime charged, because, while it had no real connection with the inferior offence, it was apt to be misconstrued by the jury into a declaration by the court that the use of the knife was disproportionate to the attack made upon the defendant.

By his eighth charge the appellant sought and obtained a correct definition of the term " mutual combat," used in several of the preceding charges on both sides. By his tenth charge he sought by a recital of the facts in evidence, from his standpoint, to apply this definition to the case before the jury. The court refused to give this last charge upon the ground that the law was sufficiently and correctly embraced in the former charge on the same subject. The same thing occurred with reference to the doctrine of what constitutes reasonable apprehension of great bodily harm. By his seventh instruction the appellant sought and obtained a declaration from the court that, in the consideration of the case, they should as far as possible put themselves in the defendant's place at the time of the occurrences, and judge from that standpoint whether, from the facts by which he was surrounded, he had sufficient reason to apprehend a present purpose to do him some great bodily harm. By his thirteenth instruction the appellant asked the court, by a summary of the evidence which he recited, as he contended that it was, to inform the jury that they might consider these facts, if they believed them to exist, as warranting a belief on the part of the defendant that he was in apparent danger. This charge

was refused by the court, not because not warranted by the evidence, or as announcing an improper exposition of the law, but because the principle was already sufficiently contained in the seventh instruction. We infer from this action that the learned judge was of opinion that where a party has obtained a correct exposition of the law governing a particular point in his case, he cannot insist upon a concrete application of the legal principle to the facts in evidence, and a declaration from the court that these facts, if believed by the jury to have been established, call for the application of the principle. We do not concur in this view. We think that a party has a right to a statement both of the principles of law controlling his case, and of a specific application of the principle to the facts in evidence. It would undoubtedly be better to embrace both propositions in one charge, because more likely in this form to guide to a proper application of the law to the facts by the jury ; and the court would perhaps be justifiable in insisting that this should be done, but if counsel have embodied the legal principle in one charge, and the concrete application of it in another, the court is not thereby authorized in wholly rejecting either. Certainly, if called upon to elect between them, both court and counsel should prefer that one which makes a specific application of the law to the evidence rather than that which states the principles generally, and in an abstract form.

The twelfth charge asked by the appellant should have been given. It announces that it is not unlawful to carry a pocket-knife, and that no invidious deductions are to be drawn therefrom in the present case, unless the jury should believe from the evidence that the defendant had the knife for the purpose of using it in some contemplated difficulty, and if they further believe that it was only used when he was driven to it by the aggressions of Thomas, and in his own necessary self-defence from a murderous assault, then they should find him not guilty. We see no reason why this instruction should not have been given, and it was certainly applicable to the facts of the case as deposed to by several witnesses.

*Reversed and new trial granted.*