## FOUTCH v. STATE.

### (*Nashville*.    February 27, 1896.)

1. HOMICIDE.  *Not every killing by one who provokes a quarrel is a felo-
      nious homicide.*

   If a party brings on a quarrel with another with no felonious
   intent or malice or premeditated purpose to kill or do great
   bodily harm, and a difficulty results, in which the person with
   whom he brought on the quarrel assaults the provoking party,
   or, by overt act, so menaces him as to endanger his life, or
   threaten him with great bodily harm, or so as to induce the
   belief of the party thus assailed or menaced that he was in
   danger of death or great bodily harm, and upon reasonable
   grounds, and he thereupon kills his assailing or menacing ad-
   versary, it is not murder.    (*Post, pp. 714, 715.*)

2. SAME.  *Same.*

   It constitutes reversible error for the Court to charge, in a case
   whose facts call for a charge upon the point, that "if one pro-
   vokes a combat. or produces the occasion to kill, and kills his
   adversary, it is murder, no matter to what extremity he (the
   slayer) may have been reduced in the combat." The correct
   proposition is that, "in order to make a man guilty of murder
   who is the 'aggressor,' or 'in fault,' or who 'provokes a diffi-
   culty,' in which his adversary is killed, he must have provoked
   it with intent to kill his adversary, or to do him great bodily
   harm, or to afford him a pretext for wreaking his malice upon
   his adversary."    (*Post, pp. 715, 716.*)

   Cases cited and approved: Smith v. State, 8 Lea, 402; Daniel v.
   State, 10 Lea, 361; 58 Ga., 212; 88 Va., 172; 31 Miss., 504; 5 S.
   W. Rep., 343; 24 S. W. Rep., 611.

3. SELF-DEFENSE.  *Notwithstanding fault.*

   A defendant cannot be denied the right to rely on the plea of
   self-defense merely because he was in any sense, justly or un-
   justly, the "aggressor" or "in fault" or "provoked the diffi-
   culty" in which another was slain.   In order to deny him the

right to rely on the plea of self-defense, it must appear that he was the "aggressor" or "in fault" or "provoked the difficulty" in such way and with such intent as the law contemplates in the use of these terms. It is not every "aggression" which produces a difficulty that is an unlawful one within the meaning of this phrase;.nor is it every fault which a man might commit that precludes him from defending himself when violently assaulted or menaced; nor is it every "provocation of a difficulty" which robs him of the right of self-defense. His right depends upon the character and intent of his act. Language used, however opprobrious, is not sufficient to deny him the right. If defendant's act is an assault, or the menace of one by an overt act, or the provocation of a difficulty with the intent to inflict death or great bodily harm in the event it is resisted, made of malice to bring about that result and enable the provoking party to wreak his vengeance upon the assailant, that is an "aggression" or "fault" or "provoking a difficulty" within the legal sense and meaning of the terms, and if the combat is provoked, or the occasion to kill is produced on this account, with this intent, and for this purpose, defendant cannot rely upon the plea of self-defense; otherwise he can. (Post, pp. 716–722.)

Cases cited and approved: Daniel v. State, 10 Lea, 261; Copeland v. State, 7 Hum., 479; Fitzgerald v. State, 1 Leg. Rep., 53; 59 Miss., 250; 14 Tex. App., 486; 70 Iowa, 657; 24 S. W. Rep., 611; 88 Va., 172; 31 Miss., 504.

---

FROM DEKALB.

---

Appeal from the Circuit Court of DeKalb County. M. D. SMALLMAN, Judge.

Attorney-general PICKLE, DAN WILLIAMS, and J. J. TURNER for State.

ROBERT CANTRELL and J. J. FORD for Foutch.

WILKES, J. The defendant was convicted in the

Circuit Court of DeKalb County of murder in the second degree, and sentenced to the penitentiary for eleven years. He appealed, and has assigned many errors. In the view we take of the case, it is only necessary to notice one of them, as it is fatal to the conviction.

A brief statement of the facts is, that defendant shot and killed Stanton Malone, on December 25, 1893, no one witnessing the killing but the participants. Malone made a dying declaration as to how the killing occurred, and defendant testified as a witness for himself. It is sufficient to say of the versions given by these two, that Malone's declaration made it an unlawful and defendant's a lawful killing. Malone, whom the record shows to have been a lewd and lascivious man, had insulted the sister of defendant by an indecent proposal, the exact terms of which are much controverted, but the fact itself is not disputable. He had immediately gone to the brother and had words with him about it, during which, as decedent claims in his dying declaration, he asked the brother to go and see her and fix the matter up. This conversation occurred at William Foutch's, where deceased remained for dinner. Defendant went to see his sister and returned. He brought back with him a double-barreled shotgun, which he left at the barn, and afterwards he and deceased went to the barn, where the difficulty and shooting occurred. At whose instance they went to the barn is a matter of controversy, the parties

giving different versions of this, but however that
may be is not now material to be considered, inas-
much as defendant, in either aspect of the fact, has
a right to a correct charge. The theory of the
State was that there was no defense or need for
defense on the part of defendant, who was never,
at any time, assaulted or menaced by overt act of
deceased, and that there was no question of self-
defense in the case; and, further, that whether defend-
ant was so assaulted or menaced by deceased, that
defendant brought on the difficulty, and, therefore,
could not rely on the plea of self-defense. On the
contrary, defendant insisted that he did not bring
on the difficulty and that he acted in self-defense,
but that if he were in any fault or such an ag-
gressor, it could not preclude him from relying on
the plea of self-defense, inasmuch as, pending their
difficulty, however it originated, defendant menaced
him with such overt act of violence as threatened
his life or great bodily harm, and he then shot in
self-defense, as he might lawfully do. These were
the respective theories of the State and defendant,
supported by evidence tending to show the facts as
each side claimed them to have existed.

Under these circumstances and upon these facts,
the Circuit Judge charged, among other things, as
follows: "If a party brings on a quarrel with no
felonious intent, or malice or premeditated purpose of
killing or doing bodily harm, and a difficulty re-
sults, in which the person with whom he brought

on the quarrel is killed, it will not be murder, let the result be what it may." But "if one provokes a combat, or produces the occasion to kill, and kills his adversary, it is murder, no matter to what extremity he (the slayer) may have been reduced in the combat." The first proposition is not technically accurate. The Judge should have said: "If a party brings on a quarrel with another with no felonious intent, or malice or premeditated purpose to kill or do great bodily harm, and a difficulty results, in which the person with whom he brought on the quarrel assaults the provoking party, or by overt act so menaces him as to endanger his life, or threaten him with great bodily harm, or so as to induce the belief of the party thus assailed or menaced that he was in danger of death or great bodily harm, and upon reasonable grounds, and he thereupon kills his assailing or menacing adversary, it is not murder."

The second proposition charged by the trial Judge is contradictory to the first, and is not the law. It is true that such statements are to be found in many books, that if one be the "aggressor" or be "in fault" or "provoke a difficulty," he cannot rely upon the plea of self-defense; but such general statements are only true when taken in the limited sense in which they must be understood and with the qualifications with which judicial utterances that gave them existence have guarded their application.

In order to make a man guilty of murder who is the "aggressor" or "in fault," or who "provokes a difficulty," in which his adversary is killed, he must have provoked it with the intent to kill his adversary, or to do him great bodily harm, or to afford him a pretext for wreaking his malice upon his adversary. *Smith* v. *State*, 8 Lea, 402; *Daniel* v. *State*, 10 Lea, 261; *Brown* v. *State*, 58 Ga., 212; *Hush* v. *Commonwealth*, 88 Va., 172; *Cotton* v. *State*, 31 Miss., 504; *Radford* v. *Commonwealth* (Ky.), 5 S. W. Rep., 343; *Massie* v. *Commonwealth*, 24 S. W. Rep., 611.

In order to deny to such party the right to rely on the plea of self-defense, it must appear that he was the "aggressor" or "in fault" or "provoked the difficulty" in such way and with such intent as the law contemplates in the use of these terms. It is not every "aggression" which produces a difficulty that is an unlawful one within the meaning of this phrase, nor is it every "fault" which a man might commit that precludes him from defending himself when violently assaulted or menaced, nor is it every "provocation of a difficulty" which robs him of the right of self-defense. Cases already cited and hereinafter cited illustrate the true meaning and show the sense in which these words must be understood. They are really intended to imply the same thing, and what they do mean may be best indicated by suggestion of some things they do not mean, taking them up separately.

First, as to the "aggressor:" It is not intended that everyone shall be held in law to be an "aggressor" who says something provoking to another which does cause a difficulty, for oftentimes such an "aggression" is a just one, and, sometimes, a necessary one; but, even when it is neither just nor necessary, the use of opprobrious language to another is not, for this reason alone, an "aggression" in the sense of the law, for no mere words, however opprobrious, will justify an assault, or the overt menace of an assault, and, hence, if one only uses such words, and is assaulted or so menaced, he may defend himself; and the same thing is true of one "in fault." He might be in such and other supposable "fault," and yet not be deprived of a like right of self-defense—as, though one has threatened or abused him, he cannot go to him and assault him for it—so when he uses to another opprobrious words, that other cannot assault him or menace him by overt act of violence, and deny him the right of defense. As to "provoking a difficulty:" It is not every provocation, just or unjust, which he may offer that will justify an assault upon him, or the menace of one from which he cannot defend himself; and to this also the limitations as to mere words used apply. After all, the "aggression," the "fault," or the "provocation" depends upon its character and its intent. If it is an assault, or the menace of one by an overt act, or the provocation of a difficulty with intent to inflict death or

great bodily harm in the event it is resisted, made of malice to bring about that result and enable the provoking party to wreak his vengeance upon the assailant, that is an "aggression" or "fault" and a "provoking of a difficulty" within the legal sense and meaning of the terms. If the "combat is provoked," or "the occasion to kill is produced," in the language of the charge, on this account, with this intent and for this purpose, defendant cannot rely upon the plea of self-defense; otherwise he can.

The 5 Lea case cited was this: Alsup had been, so far as the altercation was concerned, in one sense the aggressor, but was not as to the first assault. He was held entitled to the plea of self-defense.

In the 8 Lea case, which was one for assault and battery, the Smiths had gone to the prosecutor and provoked an altercation with him and called him a liar. Prosecutor then picked up an ear of corn, but dropped it, and advanced on Smith, who struck him. Smith was held entitled to rely on such a plea.

In the case of *Daniel* v. *The State*, 10 Lea, 261, the charge was malicious shooting. The Circuit Judge had charged the jury that a person cannot be allowed to provoke a difficulty by his own improper conduct, or join willingly and voluntarily in a combat, and then escape under the plea of self-defense, and, if done willingly and voluntarily, it would make no difference which, in fact, struck the first blow, as both would be guilty, if both joined in the combat

voluntarily and mutually.    This Court approved and applied the doctrine of the Smith case, and held that this charge was erroneous, and said that, ''if the provocation is sought for and induced by this act of the slayer, in order to afford him a pretext for wreaking his malice, it would not extenuate the offense.''    The Court also said: ''Provoking words and gestures might be used from heat of blood, in a sudden quarrel, and a fight might, under such circumstances, be engaged in, during which a party might have the right to defend himself from impending danger of death or great bodily harm.''    Nor is the rule changed because defendant had a dangerous weapon and used it.    This is a fact, like all others, to be considered, but not of itself, to deprive defendant of the right of self-defense otherwise existing.    *Fitzgerald* v.  *The State*, 1 Leg. Rep., 53; *Aldridge* v.  *The State*, 59 Miss., 250; *Cartwright* v.  *The State*, 14 Texas App., 486; *State* v. *Perigo*, 70 Iowa, 657; *Massie* v.  *The Commonwealth*, 24 S. W. Rep., 611.

In the case cited of *Fitzgerald* v.  *The State*, 1 Leg. Rep., 53, the special Judge, Howell E. Jackson, held the charge of the trial Judge erroneous, and that it should have been that if the defendant, who had armed himself with a pistol, advanced to his mother's gate determined or intending not to fight, unless for his. defense and protection, and' a violent and dangerous assault was made upon him, which threatened him with death or great bodily harm,

without his seeking or provoking it, and he killed his adversary to prevent his own death or save himself from great bodily harm, it would be a killing in self-defense." Citing *Copeland* v. *The State*, 7 Hum., 479.

In *Aldridge* v. *The State*, 59 Miss., 250, the Court held that a person who enters a combat armed with a deadly concealed weapon, may use it to protect his life, if his adversary, who struck the first blow, resorts to such a weapon, and will not be guilty of assault with intent to murder, unless he intended from the first to use the weapon, if necessary, to overcome his antagonist, and it was held to be error to instruct the jury that they might convict either of assault with intent to murder or of assault and battery, because he enters a combat armed with a dangerous weapon not exposed to view, so as to put his adversary on his guard, and, in the fight, strikes him with it, intending to kill or injure him.

In *Cartwright* v. *The State*, 14 Texas App., 486, it is held that it does not always follow that a homicide cannot be justified or excused because the slayer, by his own wrongful acts, produced a necessity to take the life of the deceased in order to preserve his own, and that consideration must be addressed to the nature and quality of the wrongful acts by which it is claimed the right of self-defense is forfeited or abridged; and that the right of self-defense is not impaired by mere preparation for the

Foutch v. State.

perpetration of a wrongful act, unaccompanied by any demonstration, verbal or otherwise, of the wrongful purpose.

In the case of *The State* v. *Perigo*, 70 Iowa, 657, the defendant, after having held the deceased at bay with a pistol, stated that it was not loaded, thus leading the deceased to make an assault upon him, in resisting which he shot and killed the deceased. Held, that this would not preclude him from the plea of self-defense if the killing could otherwise be justified on that ground, unless his purpose in stating that his pistol was not loaded was to create an occasion or excuse for taking the life of deceased, and an instruction that malice was proved by the selection and use of a deadly weapon in a deadly manner, without lawful excuse, was held erroneous.

In *Hash* v. *The Commonwealth*, 88 Va., 172, it was held to be error to charge that a man cannot, in any case, justify the killing of another upon the pretense of self-defense, unless he is without fault in bringing on the necessity of so doing on himself, and the proper charge would have been that, although the slayer provoked the combat or produced the occasion, yet, if it was done without any felonious intent—for instance, merely an ordinary battery or trespass—the accused may avail himself of the plea of self-defense.

In *Cotton* v. *The State*, 31 Miss., 504, it is held that the fact that the accused sought and brought about the difficulty, being at the time armed with

Foutch v. State.

a deadly weapon, with which he killed the deceased, does not necessarily render him guilty of murder, for, if he commence the contest, intending at the outset to inflict little or no violence on his antagonist, he may justifiably slay the other party if the danger of his own destruction be immediate and impending and otherwise unavoidable, and when the necessity to kill does not exist, if the killing be not in pursuance of a premeditated design to take life, but on a sudden quarrel.

Without considering other errors in the charge of the Court, which should all be remodeled on the line herein indicated, it is sufficient to say that the error here pointed out is fatal to the conviction, and the judgment must be reversed and cause remanded.