(45 South. 98.)

No. 16,697.

STATE v. SHORT.

(Dec. 2, 1907.)

1. HOMICIDE — DANGEROUS WEAPON — SELF-DEFENSE.

The jury having been instructed that one cannot arm himself with a dangerous weapon with the intention of taking human life, or of doing great bodily harm to another, hunt up this party, bring on the difficulty, and then plead self-defense, if there was evidence upon the subject, and there was an issue as to who started the difficulty, and who was the aggressor, the defendant had the right to the instruction requested, i. e., as to the right of self-defense at the beginning of the combat, or as to the right of one if attacked, if he was not the aggressor at first.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 614–632.]

2. SAME.

As to whether defendant went too far at the end of the combat presents another phase of the case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 143–145, 175, 614–617.]

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Andrew Jackson Murff, Judge.

S. B. Short was convicted of manslaughter, and he appeals. Reversed.

John Rutherford Land, William Alexander Mabry, and Ivy, Hill & Greenwood, for appellant. Walter Guion, Atty. Gen., James Martin Foster, Dist. Atty. (Lewis Guion and Milton Carter Elstner, of counsel), for the State.

BREAUX, C. J. The defendant was charged with the murder of Lee Howard, and indicted on the 16th day of May, 1907.

He was tried and found guilty of manslaughter on the 28th day of May.

From the sentence condemning him to serve 10 years at hard labor, he appeals.

The judge admonished the jury in his charge that the law presumed a defendant innocent until the state had made out a case against him beyond reasonable doubt, which he defined. The crimes of manslaughter and murder were also defined at length. With regard to self-defense, he instructed them that homicide may be justifiable, if done in self-defense, and defined self-defense as the right to protect one's person and property from injury, and added that a man has the right to repel force by force, using sufficient force to repel and overcome that which is opposed to him even by taking the life of his adversary where he is apparently in imminent danger of losing his own life, or of suffering great bodily harm at the hands of his adversary. And he instructed the jury that the danger of one losing his life, or the infliction of great bodily harm, need not be real to justify the taking of human life in self-defense, but it is enough if it is apparently imminent from all the surrounding circumstances, and illustrated that one assaulting another with a gun in such a manner as to create great fear of apparent death or great bodily harm would justify him in acting, though it may turn out that the gun was not loaded and was really harmless; that it is the reasonably imminent and apparent danger of losing life or of suffering great bodily harm that authorizes one to act in self-defense, but that this danger must be imminent at the time or apparently so in order to justify the taking of human life. He

stated that when one is suddenly assaulted, and from all the surrounding circumstances and facts it is necessary to save his own life, or to save himself from great bodily harm, that he need not retreat, that he has a perfect right to defend himself and to pursue his adversary until he is out of danger, but no further. He charged further that, although one may have been in imminent danger of his life, if that danger is passed, and he has his adversary in such a position that he can protect himself without inflicting death, it is his duty to do so, and if after all danger has passed he would then inflict the death blow, it would then be either murder or manslaughter according to whether it was deliberately done or done under the heat of passion; that it was for the jury to decide from all the surrounding circumstances as they necessarily must have appeared to a reasonable man situated as defendant was at the time that he inflicted the death blow. He charged further that one cannot arm himself with a dangerous weapon with the intention of taking human life or of doing great bodily harm to another, hunt up this party, bring on the difficulty, and then plead self-defense, unless he shows an honest disposition and intention to recede and withdraw from the difficulty and combat which he himself has brought on. "I charge further," said the court, "that, although one may have intended to do another great bodily harm, or even take his life, yet if he should recant from that intention and change his mind, and should suddenly come upon his adversary, who should without a probable cause make a sudden assault upon him which to a reasonable man in his position would be considered imminent danger to his life or of great bodily harm, he would have the right to defend himself and be justified therein, even by taking of life if it should seem necessary to do so to save his own or preserve himself from great bodily harm."

The defendant objected to that charge on the ground that "it was framed as to be on the weight of the evidence and invaded the province of the jury, because there was no evidence that defendant had brought on the difficulty by any words or acts reasonably calculated to provoke a difficulty, and even because if the defendant had malice against the deceased and bought a pistol for the purpose of killing him and though he showed no disposition to recede from his former intention, yet if when the defendant met the deceased deceased made an unlawful assault upon him, producing pain and bloodshed, and if defendant believed that deceased was about to kill him, or to inflict great bodily harm, or injure him, then defendant's right of self-defense would be perfect; and that the charge was prejudicial."

The court having charged the jury, in substance, that one cannot arm himself with a dangerous weapon with the intention of taking human life, or of doing great bodily harm, provoke a difficulty, and then invoke a right of self-defense, the defendant had a right to the additional instruction, which was requested, but which was not given (Bill of Exceptions was reserved to this refusal), that, although he (defendant) may have intended to do another great bodily harm, or even take his life, if at a place he had a right to be, his adversary should suddenly come upon him and should without probable cause make a sudden assault upon him, which a reasonable man in his position would have the right to believe or did believe placed him in imminent danger for his life or in imminent danger of suffering great bodily harm, he would have the right to defend himself and would be justified therein.

In the former case, first referred to, the charge was referred to by us without including the limitation or condition.

We only allude to it, i. e., the limitation or condition quoted by us from the charge, in

passing, as it affords to defendant no good ground of complaint.

Coming to the latter instruction mentioned by us, we take it up again only to state that the defendant had the right to the instruction stated without the addition of the limitation or condition, viz., that he had recanted or changed his mind, or, to copy the words, last quoted lines by us, "if he should recant from that intention and change his mind and should suddenly come upon his adversary."

In the latter case, if, as stated, he had the right to defend himself—that he was not the aggressor, although he may have gone too far after the fighting began (of that later)—he had the right to the instruction before mentioned.

The case of Foutch v. State, 95 Tenn. 711, 34 S. W. 423, 45 L. R. A. 687, is well considered, and the marginal notes are complete and sustain the view before expressed.

In regard to the right to the instruction, jurisprudence has laid down the rule that the right exists when the aspect of the case, as made up by the facts, justifies. If no evidence is given upon the point, the judge declines to charge (his statement that there was no evidence will be taken); yet, so far as the evidence goes, he should give any pertinent instruction conformably to the law. State v. Tucker, 38 La. Ann. 537.

To go one step further than the question, who was the aggressor at the beginning of the difficulty? in regard to which we have held that the defendant had the right to the judge's instruction, as stated, if the defendant afterward went beyond the bounds of necessity to defend himself, then another rule is to be considered. To this proper instruction is given in the general charge.

We will state again in regard to the first point, if the defendant was not the aggressor at the beginning of the difficulty, or if there was evidence going to prove that he was not, it was incumbent upon the court, under the circumstances, hypothetically to state it in order that the jury might consider that phase of the case, under the circumstances first above stated.

There remains no good reason to pass upon the other points presented. The issue decided is ground sufficient to remand. Those not decided may never arise again.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict of the jury, the sentence and judgment of the court below, are avoided, annulled, and reversed. The law and the evidence being in favor of the defendant, it is ordered that the case be remanded to the district court, to be proceeded with in accordance with the views herein expressed and the law.