Plaintiff in error, hereinafter called "defendant," was convicted of voluntary manslaughter for the killing of Odie Raby, and given an indeterminate sentence in the penitentiary of from two to ten years.
The charge of the court on the subject of mutual combat is as follows:
 "When one man invites another to combat and the other accepts the invitation, and they both willfully engage in a mutual combat, and one of them slays the other in such combat, he cannot successfully invoke the law of self-defense, but would be guilty of at least voluntary manslaughter."
The instruction in its effect, applied to the facts, holds that if one willingly entered into a mutual combat with another without any intent to do great bodily harm, and thereupon his adversary resorted to a deadly weapon and was about to assault him therewith, he would not have the right to defend himself or resort to such a weapon in his necessary self-defense. Such is not the law. Irvine v. State, 104 Tenn. 148-150, 56 S.W. 845; Tom and Robert Smith v. State, 105 Tenn. 317, 60 S.W. 145; Daniel v. State, 10 Lea (78 Tenn.) 262; Foutch Case, 95 Tenn. 711,34 S.W. 423, 45 L.R.A. 687.
In Irvine v. State, supra, the rule is reannounced that the mere unlawfulness of an attack does not deprive the aggressor of his right to slay the assailed party if this party, in his turn, in a manner disproportioned to the character of the assault, put in jeopardy, or on reasonable grounds appeared to do so, the life of the assailant. A charge was approved that if the defendants, or either of them, made a simple assault upon the deceased, intending little or no violence, and not of such character or under such circumstances as to give to the deceased reasonable grounds to apprehend death or great bodily harm, and this assault was met by the deceased with a counter deadly assault with a deadly weapon, the right of self-defense was not lost to the defendants.
This principle is also fully stated in the Foutch Case, supra.
In the case of Daniel v. State, supra, the charge was malicious shooting. The judge charged the jury as follows:
"It is proper for the court to say to you further that a person cannot be allowed to provoke a difficulty by his own improper conduct, or join willingly and voluntarily in a combat, and then escape under the plea of self-defense; and, if done willingly and voluntarily, it would make no difference which in fact struck the first blow, as both would be guilty, if both joined in the combat voluntarily and mutually."
Commenting upon this charge, the court said:
"The charge in this case holds, in effect, that a person who may, by improper conduct, provoke an assault, cannot be allowed to rely upon the plea of self-defense, nor can he rely upon such defense if he willingly engage in a fight, even if first assaulted and stricken."
The court held that there was error in the charge given in these unqualified terms.
Defendant insists that he did not provoke a difficulty, but acted in a lawful manner *Page 865 
in asking deceased about a hayrake, and why he had not brought it home; that deceased became angry and used violent words, saying that he had not hurt the "damned rake," and that he did not aim to bring the "damned rake" home, and, seeing that deceased was becoming angry, defendant turned and walked away toward the front gate of his yard, saying as he did so, "Odie, you will pay for this;" that thereupon deceased replied, "You are a God damned rascal, wait till I get off this wagon and we'll settle it now;" that while yet walking away defendant looked back over his shoulder, saying, "Get off," and saw deceased getting over the front bolster of his wagon to alight; that deceased jumped from his wagon and reached for two rocks; that defendant also reached for two rocks at the same time, and, recovering first, threw just as deceaased was regaining his balance with his arm raised to throw, striking deceased in the head, from which wound he died. Defendant said that he did not understand right, when deceased said, "Wait till I get off this wagon and we'll settle it now," that it meant a fight, and that when defendant said, "Get off," he did not know there was to be a fight, but supposed there was to be something of the sort. From this, his counsel insist that there was no mutual agreement to fight with rocks, but that deceased was in all respects the aggressor.
On the other hand, the state insists that defendant entered into a mutual combat; that, when deceased proposed to settle it as he was getting off the wagon, defendant invited him to get off, which meant a fight; that both parties mutually and with one accord went after rocks at the same moment, which evinced a mutual agreement to fight with deadly weapons.
If deceased was the aggressor and defendant did not intend to enter into a mutual combat with rocks or other deadly weapons when he told deceased to get off, but said this as a retort and while he was retreating, and then, seeing that deceased was getting off his wagon and observing deceased's effort to reach for the rocks, defendant went down when deceased did and grabbed up two rocks and threw as deceased was in the act of throwing, and did this only in order to defend himself from an imminent and deadly or dangerous assault from the deceased, or what appeared to him upon reasonable grounds to be such at the time, he would not be deprived of his right of self-defense. The intent and purpose of defendant in mutually agreeing with deceased to settle the difficulty, if he so agreed, must determine whether defendant is deprived of the right of self-defense. If he meant to settle it with rocks or other dangerous or deadly weapons and engaged in mutual combat with such intention, he could not successfully invoke the law of self-defense.
The charge of the court is unqualified, and the jury was instructed that defendant cannot successfully invoke the law of self-defense if he accepted an invitation or invited his adversary to combat, which was accepted and they both willfully engaged in mutual combat. This charge deprived defendant of his insistence before the jury that his in vitation to "get off," and other actions, did not imply an agreement to engage in a deadly or dangerous fight. This was the vital question in the case. Defendant is the only living eyewitness to the fight, and the error in the charge was not innocuous.
There is also an assignment of error because of the refusal of the trial judge to sustain a plea in abatement to the indictment This plea, in substance, avers that the Assistant Attorney General, who appeared before the grand jury at and before the time the indictment was found and prepared and submitted the indictment, was in the employ of the prosecutor in a damage suit brought against the defendant herein for the unlawful killing of deceased, and was to receive a contingent fee in that case. This, if true, is against public policy. The Attorney General and his assistant are officers of the state. If either accepts a fee from a private individual in any matter about which he is to act officially, he is guilty of the most reprehensible conduct. The indictment would be dismissed if the plea had been seasonably interposed and sustained by the proof. However, it was waived because defendant allowed one continuance to pass and only filed his plea at the next term, when the case was called for trial, without giving sufficient reason for the delay. He averred he had discovered the facts since the last term. It must appear from the averments of the plea in abatement that it was filed at the earliest possible moment. Chairs v. State, 124 Tenn. 644,139 S.W. 711.
For the error in the charge, the judgment is reversed, and the case is remanded for a new trial.
 *Page 1