STATE OF NORTH DAKOTA, Respondent, v. JOSEPH SWIFT, Appellant.

(208 N. W. 388.)

**Self-defense — evidence held to make it a question for jury as to whether defendant acted in self-defense.**

    1. In a prosecution for a homicide, it appeared that the defendant provoked the controversy in the first instance. After a fistic encounter, deceased picked up a plank, threw it and hit accused, then withdrew and entered a store, the defendant following and meeting the deceased at the entrance to the store.

---

Note.— (1) As to self-defense set up by accused who began the conflict, see annotation in 45 L.R.A. 687.

(3) Aggressive conduct of slayer held to preclude self-defense, see 13 R. C. L. 823, 831; 3 R. C. L. Supp. 91.

(5) As to right of jurors to act on their own knowledge, see annotation in 37 L.R.A. (N.S.) 790.

Both were armed with revolvers. The defendant shot and killed deceased. The defendant claimed that he returned to the store to obtain his coat. It is held that, in view of all the evidence, the question of whether defendant acted in self-defense is for the jury to determine.

**Self-defense — to invoke right of self-defense danger must be present, real or apparent.**

2. Instructions examined and found applicable to the facts in the case.

**Instructions — homicide — charging on various degrees of murder and manslaughter and on law of self-defense held proper.**

3. In a prosecution for murder in the first degree, the court properly charged on the various degrees of murder and manslaughter and on the law of self-defense, and further charged that, if defendant began the quarrel with felonious intent to kill deceased, or do him great bodily harm, he cannot claim self-defense; but did not instruct that, if he began the quarrel, intending to commit a misdemeanor, or battery only, and in the progress of the fight was compelled to take the life of his adversary, in order to save his own, he could be found guilty of manslaughter, it is held that the verdict of the jury, finding the defendant guilty of the lowest degree of manslaughter within the omitted charge, made the error nonprejudicial.

**Criminal law — instructions — no error in not defining certain words used in instructions.**

4. For reasons stated in the opinion, it is held that no error was committed in not defining certain words and phrases used in the instructions.

**Criminal law — instructions — instructing jury that they may take into account, if necessary things of common knowledge.**

5. It is not error to instruct the jury that they have a right to take into account, should it become necessary, in considering the evidence, things of common knowledge, such as the laws of nature, the measure of time, geographical divisions, etc., as though evidence had been offered establishing the same.

**Homicide — objections as to questions about bullet wound overruled, held not error.**

6. Objection to certain questions and answers considered and held nonprejudicial.

**Criminal law — evidence — photograph of premises admitted, not error.**

7. For reasons stated in the opinion, no prejudicial error was committed in receiving a photograph of the premises in evidence, showing where the shooting occurred.

**Criminal law — objections to certain pleading and suggestive questions overruled, held not reversible error.**

8. To overrule an objection to a leading and suggestive question is not re-

versible error, where it is merely a resumé of what the witness had already testified to.

**Criminal law — failure to strike answer not pointed and somewhat uncertain, held not reversible error.**

9. Failure to strike an answer which is not pointed and somewhat uncertain, is not error, where the same subject was definitely covered by other witnesses.

Opinion filed March 29, 1926.

Criminal Law, 16 C. J. § 949 p. 512 n. 57; § 954 p. 514 n. 3; § 1528 p. 744 n. 11; § 2360 p. 966 n. 77; § 2463 p. 1030 n. 60, 61 New; § 2498 p. 1057 n. 24; 17 C. J. § 3656 p. 311 n. 22; § 3665 p. 324 n. 68; § 3677 p. 333 n. 78, 81. Homicide, 30 C. J. § 207 p. 44 n. 55, 61; § 208 p. 44 n. 62; p. 45 n. 64, 65; § 580 p. 329 n. 20; p. 330 n. 24, 25; § 618 p. 367 n. 11; § 711 p. 445 n. 19.

Appeal from the District Court of Adams County, *Berry,* J.

Joseph Swift was convicted of manslaughter in the second degree, and he appeals.

Affirmed.

*Sullivan, Hanley & Sullivan,* for appellant.

Where the prosecution in a homicide case is based on the theory that the defendant provoked the difficulty, the character of the provocation in connection with the intent should be set out and defined in separate affirmative charges. Gibbons v. Territory, 115 Pac. 129.

If one makes an attack upon another for the purpose of committing a felony and wreaking his malice upon the person attacked, and the person so attacked makes a counter attack and is slain, the plea of self-defense is not available; but where the original attack by accused was not with felonious intent, he may plead self-defense. State v. Huber, 148 Pac. 562.

When in a homicide case the state endeavors to show that the defendant sought or brought on the difficulty and the general rules of law were charged on this phase of the case, the court should define and state what character of acts on the part of the defendant would deprive him of the right of self-defense. Gibbons v. Territory, supra.

*Geo. F. Shafer,* Attorney General, *Emil Scow,* Special Assistant Attorney General, and *A. McG. Beede,* State's Attorney, for respondent.

If the life of another is taken by one engaged in the commission of a crime less than a felony or in mutual combat, such slaying is manslaughter. People v. Sullivan, 63 L.R.A. 384, 385.

Where a difficulty is intentionally brought on for the purpose of killing the deceased, the fact of imminent danger to the accused constitutes no defense, but when the accused embarks in a quarrel without a felonious intent or malice or premeditated purpose of doing bodily harm or killing, and under reasonable belief of imminent danger should inflict a fatal wound, it is not murder, but may be manslaughter. People v. Hayes, 99 Pac. 356.

If the necessity for the killing was brought about by the wrongful act of the defendant, he cannot justify or excuse himself on the ground of such necessity. Boykin v. People, 45 Pac. 423.

The principle of law that an erroneous instruction is not cured, and the presumption of prejudice therefrom not overcome by a correct statement of the law on the same subject elsewhere in the charge, is subject to the qualification that prejudicial error does not follow, where it is evident that no harm resulted from the erroneous instruction. Egget v. Allen, 82 N. W. 56; Richards v. State, 51 N. W. 652; Dillon v. State, 119 N. W. 352.

ENGLERT, District J. Defendant, Joe Swift, was charged with the crime of murder in the first degree. He was informed against in the district court of Sioux county, for having wilfully, unlawfully, and with malice aforethought, shot and killed one Howard Smith, on the 9th day of December, 1919.

The case was tried in Adams county, and defendant was found guilty of manslaughter in the second degree, and the jury fixed his punishment at five years in the penitentiary. Judgment was entered thereon, and his motion for new trial having been denied, defendant appeals.

For purposes of the record, we will refer to Joe Swift, as defendant, and Howard Smith, the deceased, as Howard, and his brother, Walter Smith, as Walter.

Both the defendant and Howard were farmers, residing in Sioux county, North Dakota. Defendant was about thirty years of age, lived with his wife and three children, on the farm, about three miles west

of the village of Selfridge. Howard was a single man, and lived on the farm with his parents.

On the morning of December 8, 1919, the defendant was working on a wire fence, near the highway, of his farm. About 10:30 of this morning, Howard drove by in an auto, shot and killed a dog in the public highway. The dog belonged to one F. E. Seeley, but was staying with and accompanied the defendant. After shooting the dog, Howard drove on.

Between 12:00 and 12:30 P. M., of this day, Howard drove to Walter's place. Howard came to take Walter and his wife to Selfridge, to see the dentist. Walter lived about five miles west of Selfridge. They left home about two o'clock in the afternoon. On the way, they passed defendant's place. He was working in the yard. When he saw the Smiths pass, defendant turned towards his house.

On arriving in Selfridge, the Smiths went to Wead's store, to buy gasoline. They had been in the store from ten to fifteen minutes, when the defendant came in. He accosted Howard, in a quarrelsome manner, and finally took hold of his arm. Defendant wanted to know what Howard's object was in shooting the dog. The manager of the store told them that if there was going to be any trouble, they had better go outside.

The defendant and the two Smiths then took off their coats, and went out. After getting outside, defendant and Walter had a short fistic encounter, and Walter was either knocked or fell into a window. He then quit the fight, and re-entered the store. Then, Howard came up, and he and the defendant started fighting. After Howard fell, or was knocked down, he rushed for a plank that was lying on the sidewalk. Howard raised the plank to a striking position, and defendant backed off towards the middle of the street. Howard then threw the plank, and hit defendant on the arm. Howard then turned back to and re-entered the store. Defendant followed up to the store, drew a revolver, and shot Howard through the open door of the store.

Defendant left his home for Selfridge on horseback, and on his way, passed F. E. Seeley, a short distance west of town. Seeley was then town marshal, and was loading hay. As defendant passed, he said: "If you want to save Howard Smith's life, you want to get down here." By the time Mr. Seeley had finished the loading of his hay, and got

to Selfridge, the shooting had taken place, Howard Smith was dead, and defendant had surrendered himself to the justice of the peace.

The defendant took the stand in his own behalf. He admitted shooting Howard Smith, but claimed that he did it in self-defense. There is little conflict in the testimony, except that defendant claims that the plank thrown by Howard hit him not only on the arm, but also on the head, and that he was somewhat dazed from the effects of the blow. He admitted that Howard then left the street, but claims he did not know that Howard had entered the store. Immediately after Howard had thrown the plank, defendant started coming towards the store again. It is his claim that he started back to enter the store to get his coat.

As to what then happened is described by defendant himself as follows:

"As I was walking back, I felt kind of dazed, there was a fellow appeared in front of me, my brother. He appeared like this, and said: 'Look out, Joe, you are going to get your head shot off.' At that minute, I looked up and saw that I was looking right straight at Howard Smith, with a gun in his hand, and I thought right then my time had come, and I was going to die, so I grabbed the gun at that instant, thinking I was going to die, and as I grabbed her up that way, she shot."

Farther on, he was asked:

Q. Was he higher up than you were:
A. Yes.
Q. How much?
A. Right about 18 or 20 inches.

There is evidence on the part of the defendant that on returning to the store, Howard mentioned that he would "fix that son of a bitch," and that he got a revolver from his overcoat pocket, in the store, and started for the front door, where he was met by defendant, and shot.

1. It is claimed that the evidence is insufficient to sustain the verdict. It is argued that the entire evidence does not show, beyond

a reasonable doubt, that the alleged shooting was not justifiable, and that it was not done in self-defense.

The right to kill an assailant in self-defense is founded on the principle of self-protection. It is based on the law of necessity, or apparent necessity. This fundamental right has come down to us through the ages, and is now incorporated in our statutes, §§ 4356 and 9547, Compiled Laws of 1913.

But this rule so justly founded and now so well grounded, also recognizes the fact that the life of the other party may be snuffed out in the fraction of a second, but can never be restored. Therefore, to the end that the right of self-defense may not be abused, or unjustly invoked, it carries with it that equally well founded principle that killing is not justified or excused unless there is actual or apparent danger of loss of life or of receiving great bodily harm. 13 R. C. L. pages 813–816.

From the evidence in this case, it is apparent, that at the beginning, defendant · was the aggressor. He was angry because Howard had shot the dog that morning, on the public highway. The jury might well conclude that when defendant saw the Smiths drive by his place in the afternoon, that he was aroused at the sight of them, armed himself, and shortly pursued them on to Selfridge.

That on arriving in Selfridge, he at once entered the store, and accosted Howard in a troublesome mood, is admitted by defendant himself. That he was more than a match for both the Smiths in their fistic combats, stands undisputed. That Howard, after throwing the plank at defendant, turned back and entered the store, is clearly established, although defendant claims he did not know where Howard had gone to. In any event, both the Smiths had withdrawn from the scene of conflict. Defendant then started back to enter the store.

Taking defendant's version of it, Howard stood at the entrance to the store. They met at the door, both armed, and Howard was shot and killed. On the point as to whether Howard met the defendant at the door with his gun drawn, there is some difference in the evidence. There is some dispute as to just where Howard stood when defendant came up. Some had it that he stood behind Walter; others, that he was a little to one side.

Walter testified that the defendant started to pull his gun when he

came near the store. "Well, I was standing in the door, and I pointed my finger at him (meaning defendant), and said 'You are going to use a gun,' and I turned around quick and went back into the store. . . . Well, when I walked back into the store, and Joe kind of turned around, I saw my brother the first time was when he ducked and I heard the shot."

Only one shot was fired, and that was fired by the defendant. From the defendant's own testimony there is some ground for debate on whether he acted in good faith and in self-defense. According to his claim, Howard was standing 18 or 20 inches higher than defendant, with a gun in his hand, waiting for defendant to come up, and pointed at him. The brother of defendant called out to him that he was going to have his "head shot off."

According to his version defendant felt dazed, yet he had presence of mind enough to whip out his gun and shoot Howard, while Howard was standing pointing his gun at defendant. Whether such were the facts, was clearly a question for the jury to determine.

While the defendant would not have to wait until his life was endangered, or the shot fired, still, the circumstances in this case are such that the minds of reasonable men might readily differ on the question of whether the defendant acted in self-defense, or came back for revenge. See note in 67 L.R.A. 547.

The store was not the home nor the place of business of either of these parties, and while this would not deprive defendant of his right of self-defense, it does bear on the question of whether his rapid return to the store was for the purpose of getting his coat, or preparing to shoot Howard Smith. See Brown v. United States, 256 U. S. 335, 65 L. ed. 961, 41 Sup. Ct. Rep. 501, 18 A.L.R. 1276, and cases cited.

John Frank, a witness for the State, testified that after defendant fired the fatal shot, "he turned around and picked up his mackinaw from the sidewalk, and said, 'I fix him,' and he turned around and walked across the street into the poolhall." If this evidence is to be believed, then his coat was on the sidewalk, and not in the store.

The right of self-defense is limited to prevention, and "does not extend to punishment for an act already committed." State v. Sorrentino, 31 Wyo. 129, 34 A.L.R. 1477, 224 Pac. 420.

The fact that defendant brought on the controversy in the beginning

has some bearing on the question of whether he acted in good faith at the time the shooting occurred.

From the evidence in this case, it was clearly a question for the jury to determine whether the defendant committed the act in self-defense, or from other motives. Palmer v. State, 9 Wyo. 40, 87 Am. St. Rep. 910, 59 Pac. 793; 13 R. C. L. 819, § 124.

The jury evidently found that there were sufficient mitigating circumstances in the case to reduce the crime from murder to manslaughter in the second degree, but that they were not sufficient to completely justify or excuse the act of the defendant.

It is argued that if the defendant intended to kill Howard, he would have done so at the time Howard threw the plank. This was all available in argument to the jury, but the consideration to be given thereto under all the facts and circumstances in the case, was for the jury.

2. The claim is made that the Court erred in charging the jury as follows:

"I charge you, members of the jury, that the doctrine of self-defense or self-protection is founded upon necessity, and in self-defense no more violence may be used than is necessary under all the circumstances, but it is not necessary that at the time of the commission of the acts of self-defense, the person so acting in self-defense actually was in danger, so long as the person acting in self-defense actually believed himself in danger, and commits the act of self-defense upon what he believes to be reasonable apprehension of danger to himself, resulting from the commission of some overt act towards him by an antagonist, from which he apprehends such danger. A person attacked need not retreat before exercising the right of self-defense. But, on the other hand, I charge you, members of the jury, that while the right of self-defense commences when the necessity, real or apparent, begins, it ends when that necessity ceases, and the danger, real or apparent, having passed, he who has been in danger has no right to pursue his assailant to slay him because of apprehension of the recurrence of the danger at some future time. In other words, members of the jury, to invoke the right of self-defense, the danger must be a present one, real or apparent, as distinguished from a past one, or danger of future injury."

It is conceded that the legal principle involved in this instruction

is correct, and the only question that arises is whether it is applicable to the facts. This is the sole criticism made of it.

The facts narrated, and the cases already cited, dispose of this objection.

3. Error is assigned on the following instructions:

"I further charge you, gentlemen of the jury, that if you find from the evidence, beyond a reasonable doubt, that the defendant, Joseph Swift, had formed a design to kill the said Howard Smith, or to do some great personal injury, and to carry out such design, armed himself with a deadly weapon, to-wit: a 32-calibre Colt's automatic revolver, and after meeting the said Howard Smith, provoked, brought on or entered into a difficulty with the said Howard Smith, which resulted in his death, for the purpose of wreaking vengeance and malice upon the said Howard Smith, or to do him some great bodily harm, then there is no self-defense in this case, however imminent the peril of the defendant may have become, and if, under such circumstances, you believe to your satisfaction beyond a reasonable doubt that the defendant killed the said Howard Smith in the manner charged in the information, then he is guilty of murder in the first degree.

"You are instructed that self-defense is not available as a defense to a defendant who has sought a quarrel with the design to force a deadly issue, and thus through his fraud, contrivance, or fault, to create a real or apparent necessity for killing.

"You are instructed that if the defendant was the one who brought on or provoked the personal encounter between Howard Smith and this defendant, the defendant thereby disabled himself from relying upon the plea of self-defense in justification of the killing. . . .

"You are instructed that if you believe from the evidence that the defendant, Joseph Swift, was the aggressor in the conflict which led to this homicide, and provoked the difficulty, it was the duty of the said defendant to retire as far as his ability would permit without danger of death or great personal injury without increasing his peril. . . .

"You are instructed that if the defendant wilfully and intentionally brought on the difficulty, controversy or combat, whether by words or otherwise, for the purpose of obtaining an opportunity to kill, or inflict *bodily harm* upon the deceased, Howard Smith, or wreak malice

upon him, the defendant cannot, if you find such to be the case, justify or excuse the homicide on the ground of self-defense."

Paragraphs of all these instructions, either in connection with other instructions on the subject, or standing alone, have been approved in many cases.

State v. Jones, 71 N. J. L. 543, 60 Atl. 396; State v. Dotson, 26 Mont. 305, 67 Pac. 938; Boulden v. State, 102 Ala. 78, 15 So. 341; Ragsdale v. State, 134 Ala. 24, 32 So. 674; Adams v. People, 47 Ill. 376; Dittmer v. State, 45 Tex. Crim. Rep. 103, 74 S. W. 34; State v. Hutto, 66 S. C. 449, 45 S. E. 13; Whitney v. State, 154 Ind. 573, 57 N. E. 398; State v. Guidor, 113 La. 727, 37 So. 622; Mercer v. State, 41 Fla. 279, 26 So. 317.

It is contended that by those instructions, the Court withdrew from the consideration of the jury his right of self-defense. Such are not the instructions. The Court fully and fairly instructed on the law of self-defense, and concluded the same by saying:

"If you, members of the jury, believe from the evidence that at the time the defendant is alleged to have shot Howard Smith, the deceased, the circumstances surrounding him were such as would reasonably justify or induce in his mind an honest belief that he was in danger of receiving from the deceased, Howard Smith, some great bodily harm, and that the defendant in doing what he did was acting solely from instincts of self-preservation, then he is not guilty, and you should so find."

But the most important criticism directed to these instructions is that the trial Court did not distinguish the character of the intent with which the defendant became the aggressor. It is the claim of the defendant that where the original attack was begun with an intent which would only amount to an ordinary misdemeanor, though later on it became necessary for him to take his adversary's life, he would not be deprived of his right of self-defense.

He admits the rule to be that if he provoked the controversy with intent to kill Howard Smith, or to do him great bodily harm, or to afford a pretext for wreaking vengeance upon him, then he cannot avail himself of the right of self-defense.

One of the leading cases on the subject, and which is cited by defendant, Foutch v. State, 95 Tenn. 711, 45 L.R.A. 687, 34 S. W. 423, states the rule as follows:

"After all, the aggression, the fault, or the provocation depends upon its character and its intent. If it is an assault, or the menace of one, by an overt act, or the provocation of a difficulty with intent to inflict death or great bodily harm, in the event it is resisted, made of malice to bring about that result and enable the provoking party to wreak his vengeance on the assailant, that is an 'aggression,' or 'fault,' and a 'provoking of a difficulty,' within the legal sense and meaning of the terms. If the 'combat is provoked,' or 'the occasion to kill is produced,' in the language of the charge, on this account, with this intent, and for this purpose, defendant cannot rely upon the plea of self-defense; otherwise, he can."

Under the instructions complained of, the jury was told that if defendant armed himself with a deadly weapon, with design to kill Howard Smith, or to force a deadly issue, or to wreak his malice or vengeance upon him, then he cannot claim the right of self-defense. This is the established rule. 13 R. C. L. 831, § 136.

But it is also the rule that if the defendant did not provoke the quarrel with a felonious intent, but to commit only a battery, amounting to a misdemeanor, and during the progress of the controversy or fight, found it necessary to take the life of deceased, in order to save his own, then he can avail himself of such defense to reduce the crime from murder to manslaughter.

State v. Partlow, 90 Mo. 608, 59 Am. St. Rep. 31, 4 S. W. 14; State v. Gordon, 191 Mo. 114, 109 Am. St. Rep. 790, 89 S. W. 1025; Young v. State, 53 Tex. Crim. Rep. 416, 126 Am. St. Rep. 792, 110 S. W. 445, and cases cited in the Trinity Series, 13 R. C. L. 823, § 127.

In an extensive note to the case of Foutch v. State, supra, the decisions from the various states on the subject are there collected. Under the head of "General doctrine," the rule is thus stated:

"The right of self-defense has been divided into two general classes, perfect and imperfect. The perfect right of self-defense can only obtain and avail where the party pleading it acts from necessity, and is wholly free from wrong or blame in occasioning and producing the necessity which requires his action. If, however, he is in the wrong, if he is himself violating, or in the act of violating, the law, and on account of his own wrong, has placed himself in such a situation that

it becomes necessary for him to defend himself against an attack made upon himself, which is superinduced or created by his own wrong, the law limits his right of self-defense, and regulates it according to the magnitude of his own wrong, and such a case will be one of imperfect, self-defense. Whenever a party by his own wrongful act provides a condition of things wherein it becomes necessary, for his own safety, that he should take life or do serious bodily harm, then the law imputes to him his own wrong and its consequences, to the extent that they may and should be considered in determining the grade of offense which; but for such acts, would never have been occasioned." [45 L.R.A. 687.]

By its verdict, the jury found that the defendant was not entitled to an acquittal on the ground of self-defense. It also found that there were circumstances of mitigation and justification, and therefore did not find him guilty of murder, but found him guilty of the lowest grade of manslaughter known to our statute.

The error, then, if there was any, complained of, under the circumstances, was made non-prejudicial by the verdict of the jury. State v. Carabajal, 26 N. M. 384, 17 A.L.R. 1098, 193 Pac. 406.

4. Complaint is also made because the Court did not define the words or phrases:

"Brought on or provoked the encounter," "sought a quarrel," "entered into a difficulty," "aggressor in the conflict," "provoked a difficulty," "brought on the difficulty," "controversy or combat," in its instructions.

It is contended that those are legal terms or phrases, and that the court should have explained or characterized the acts which would deprive defendant of his right of self-defense.

The terms or phrases appear in connection with such explanations as: "had formed a design to kill the said Howard Smith, or to do him great personal injury, and to carry out such design, armed himself with a deadly weapon," etc., and if he "sought a quarrel with the design to force a deadly issue," etc., "or to wreak malice upon him." The words and phrases used are quite generally well understood. We are unable to see where the jury could have been misled by these instructions. Furthermore from the fact that appellant made no request for more specific instructions, it follows that he was not in a position

to predicate error thereon. State v. Glass, 29 N. D. 620, 151 N. W. 229.

5. It is claimed that the court erred in instructing the jury that they might take into account, should it become necessary, in considering the evidence, things of common knowledge, such as the laws of nature, the measure of time, geographical divisions, etc., as though evidence had been offered establishing the same.

The error complained of is without merit, under § 7939 of the 1913 Compiled Laws, and the various subdivisions thereunder. See also Solberg v. Robbins Lumber Co. 147 Wis. 259, 133 N. W. 28, 37 L.R.A. (N.S.) 790, and note on the subject at page 793.

6. It is claimed that the court erred in overruling defendant's objections to the following questions and answers:

Q. And what did you find? Tell the court and jury what you found in the probing of that wound?

A. I found what seemed to be a hole caused by a bullet, extending from the place of entrance running towards the left lung. At the request of the coroner, I opened the thoracic cavity, and abdominal cavity. . . .

Q. And can you tell from that testimony whether or not the bullet wound as described by Mr. Mides was the cause of the death of Howard Smith, or the party which he described.

A. If a person got a bullet wound in the direction that was described, the chances are it would cause his death.

Whatever error there might have been in the admission of this testimony, at the time it was admitted, was cured by the fact that the defendant admitted the shooting and killing of Howard Smith.

7. It is claimed that the court erred in admitting in evidence state's exhibit A. The exhibit received was a photograph taken of the place where the shooting occurred. The evidence shows that the conditions at the time the photograph was taken were the same as they were the day Howard Smith was killed. Hence there was no error.

8. It is claimed that the court erred in the admission, over objection, of the following question and answer:

53 N. Dak.—59.

Q. You say that he was walking back towards the store and was pulling his gun?

A. Yes.

While this question was leading and suggestive, it was a mere resumé of what the witness had already testified to, and hence no prejudice to the defendant can have resulted therefrom.

9. Error is assigned on the admission of the following question and answer:

Q. Now will you indicate the position that he was in behind the storm-shed door? Just about how he was standing?

A. I may say that he was right here, and it would appear that he was standing close to this edge.

While the court might well have stricken the answer on defendant's motion, still, we are unable to see, in view of all of the testimony surrounding the quarrel and the shooting, how any prejudice can have resulted to the defendant from this answer.

This is especially so, since another witness testified definitely on the same subject.

Finding no reversible error in the record, the order of the trial court denying defendant's motion for a new trial, is affirmed.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.

Mr. Justice JOHNSON, disqualified, did not participate, Honorable M. J. ENGLERT, of First Judicial District, sitting in his stead.