## WHITNEY v. THE STATE.

[No. 19,207.    Filed May 10, 1900.]

CRIMINAL LAW.—*Evidence.*—*Cross-Examination.*—A question asked a witness for the State on cross-examination if he and another boy did not stone the house of defendant's brother, where defendant was staying, was not competent as showing hostility of the witness to defendant.  *pp. 576, 577.*

Whitney *v.* State.

---

EVIDENCE.—*Objections.*—Where an objection is sustained, if it appears that the evidence was inadmissible for any reason, and the decision excluding it was correct, it makes no difference whether the ground of objection was sufficient or not. *pp. 577, 578.*

CRIMINAL LAW.—*Evidence.—Cross-Examination.*—A question asked a witness for the State on cross-examination for the purpose of showing the ill feeling of the witness and his associates toward defendant "Isn't it a fact that you boys have got it in for defendant?" was incompetent, where none of the persons supposed to be hostile was named or described in any manner, and the signification of the slang phrase was not explained to the witness. *pp. 578, 579.*

EVIDENCE.—*Exception.—Offer to Prove.*—In order to save an exception to the ruling of the court excluding an answer to a question propounded to a witness, a statement must be made to the court of the testimony the witness would give if permitted to answer the question, before a ruling is made on such objection, and an exception reserved to the ruling at the time it is made. *pp. 579, 580.*

INSTRUCTIONS.—*Refusal to Give.*—Available error cannot be predicated upon the action of the court in refusing to give certain instructions where the substance of each, so far as it stated the law correctly, was fully given in the charge of the court. *pp. 581, 582.*

NEW TRIAL.—*Newly Discovered Evidence.*—A new trial will not be granted on account of newly discovered evidence, where such evidence is intended only for the purpose of impeachment. *p. 582.*

SAME.—*Newly Discovered Evidence.*—Where in an application for a continuance on account of the absence of a witness the defendant stated in an affidavit filed in support of the application what he expected to prove by the absent witness, a new trial will not be granted on account of newly discovered evidence of such witness. *p. 583.*

From the Marion Criminal Court. *Affirmed.*

*Frank Hendricks,* for appellant.

*Wm. L. Taylor,* Attorney-General, *Merrill Moores* and *C. C. Hadley,* for State.

DOWLING, J.—The indictment in this case charged the appellant with an assault and battery with the intent to commit murder in the first degree. The appellant pleaded not guilty, and, upon a trial by a jury, was convicted of the felony set out in the indictment. A motion for a new trial was made and overruled, and judgment was rendered on the verdict.

The error assigned is the decision of the court overruling the motion for a new trial.

The grounds of the motion argued by counsel for appellant relate to rulings upon objections made by the State, and sustained by the court, to questions asked of witnesses by counsel for appellant; to instructions given and refused; and to that branch of the motion which was founded upon evidence alleged to be newly discovered.

The facts of the case as shown by the proof are, briefly, these: On the night of November 13, 1898, the appellant, who was a youth of about eighteen years, in company with a crowd of other boys and young men, was following a political procession through the streets of Indianapolis. Many of the crowd had light sticks, or thin boards torn from orange boxes, in their hands, and some rough play took place in which they struck each other with these sticks and boards. Appellant was hit on the head with a broom by some one, at which he became angry, and wrongfully accused one Arthur Braxton, a boy of sixteen years, of the act. Braxton denied the charge, and, after some further altercation in which appellant used threatening language toward Braxton, the parties separated. When the crowd had proceeded some three or four squares from the place of the difficulty, Braxton, with several of his companions, sat down near the curbing on Market street, opposite Tomlinson Hall. While they were there, appellant, who had passed beyond them on another street, came back to Braxton, thrust a revolver near his face and fired. Braxton dodged, and the first shot missed him. A second shot struck Braxton in the forehead, and came out near his ear. A third entered his left side, near his breast, and lodged in his back. Appellant attempted to discharge two more barrels of his pistol at Braxton, but his revolver missed fire, and he ran away. Braxton was severely wounded, and, in consequence of his injuries, was confined in a hospital two and one-half weeks. The appellant testified that he had

been followed by a crowd, of which Braxton was one, and that they had hit him with sticks and stones. To escape from this attack, he said that he had taken refuge in English's Hotel (some four squares from Tomlinson Hall), and had left that building by a rear entrance. He further testified that he came upon Braxton and his associates when opposite Tomlinson Hall, unexpectedly; that Braxton immediately attacked him with a stick; that he believed he was in danger of great bodily harm; and that he shot Braxton in necessary self-defense. The evidence, however, very fully sustained the verdict, and no question is made as to its sufficiency.

The first point presented by counsel for appellant is that the court erred in sustaining the objection of the State to the following question, asked by the appellant on the cross-examination of Charles Smith, a witness for the prosecution: "I will ask you if it is not a fact that you and another boy, whose name I do not now recall, on the 24th day of September, went down and stoned the house where Henry Whitney was staying, at his brother's house?"

The witness had previously been asked whether he was friendly to the appellant, and he had answered that he was a friend of both parties. It is argued that the question was competent for the purpose of showing that the witness was, in fact, hostile to the appellant.

It it undoubtedly true, as stated by the text-writers upon evidence, that where a man's liberty or his life depends upon the testimony of another, it is of infinite importance that those who are to decide upon that testimony should know to the greatest extent how far the witness is to be trusted. The hostility of a witness toward a party against whom he is called to testify is always a circumstance affecting his credibility, and may be proved by any competent evidence. It may be shown by the cross-examination of the witness himself, or other witnesses may be called, who can swear to facts from which it may be inferred. It is

said that it is not a collateral fact regarding which a party is bound by the answer of the witness on cross-examination. If he denies that he entertains any hostility of feeling, other witnesses may be called to contradict him. But where witnesses are so called to discredit another witness, the rule requires that they shall state *his declarations* of unfriendly or hostile feeling, or the *facts* which imply hostility. They cannot be permitted to state their own opinions, or conclusions, on the subject. 1 Greenl. on Ev., §455; *Scott* v. *State*, 64 Ind. 400, 402; 29 Am. & Eng. Ency. of Law, p. 772, and cases cited in notes.

In *People* v. *Brooks*, 131 N. Y. 321, 325, 30 N. E. 190, it was held that this "is not a case where the party against whom the witness is called is seeking to discredit him by contradicting him. He is simply seeking to discredit him by showing his hostility and malice; and as that may be proved by *any* competent evidence we see no reason for holding that he must first be examined as to his hostility. And such we think is the drift of the decisions in this state and elsewhere."

The supposed *fact*, referred to in the cross-examination of Smith, was that in September he had stoned a house occupied by appellant's brother, and at which appellant was staying. This fact, if established, would not have authorized the inference that the witness was hostile to the appellant. The motive for stoning the house of a relative of appellant might have been enmity toward that relative, which did not extend to the appellant. In the absence of anything connecting the stoning of the house with ill feeling or malice toward the appellant, we think the fact inquired about was immaterial.

Counsel for appellant further contends that the objection should have been overruled, for the reason that it was placed on the ground that the evidence was *incompetent* and *immaterial*, no more specific defect being pointed out. Where an objection to evidence is sustained, if it appears

that the evidence was inadmissible for any reason, and that the decision excluding it was correct, it makes no difference whether the ground of the objection was sufficient or otherwise. *Maier* v. *Board, etc.*, 151 Ind. 197.

Had the objection been overruled, the failure to point out more particularly the reasons for excluding the evidence might have deprived the party objecting of the benefit of his exception, unless the evidence on its face appeared to be incompetent. *Heap* v. *Parrish*, 104 Ind. 36; *McCullough* v. *Davis*, 108 Ind. 292; *Underwood* v. *Linton*, 54 Ind. 468; *First Nat. Bank* v. *Coulter*, 61 Ind. 153; *Farman* v. *Lauman*, 73 Ind. 568; *City of Delphi* v. *Lowery*, 74 Ind. 520, 39 Am. Rep. 98; *Lake Erie, etc., R. Co.* v. *Parker*, 94 Ind. 91; *Kinsman* v. *State*, 77 Ind. 132.

It is next insisted that the court erred in sustaining the objection of the State to the question asked upon the cross-examination of one Eugene McGinness, a witness for the plaintiff, below: "Isn't it a fact that you boys have got it in for Henry Whitney?" It is claimed that the object of the inquiry was to show the ill feeling of the witness and his associates toward the appellant. The question was objectionable both in form and substance. None of the persons supposed to be hostile was named, or described in any manner. The signification of the slang phrase "have got it in" was not explained to the witness, and the court could not determine how the witness would understand it. The question was not calculated to elicit any declaration of hostility of any of the persons referred to, or any fact from which their state of feeling toward the appellant could be inferred. The same witness was asked: "Isn't it a fact that there is a gang of you that go together, and that you frequently assault people on the street?" The court sustained an objection to the question, and that ruling is complained of. The question was irrelevant to the issue which was being tried by the jury, and it was not proper

by way of impeachment.  Its tendency was to open up a new controversy, without definite limits, the result of which could have no important bearing upon the question of the guilt or innocence of the appellant of the charge in the indictment.   The witness could not have been impeached by another witness by proof of particular acts of misconduct, and for the same reason it was not competent to ask him if he had been guilty of divers assaults upon persons on the streets.   Sallie Whitney, a witness for appellant, was asked the following question by counsel for appellant: "I will ask you whether or not on the 24th day of September Charles Smith rocked your house at a time when Henry Whitney was there?"   For the reasons stated in determining the first point made by appellant, this question must be held incompetent.   Another question put by appellant's counsel to Asbury Whitney, also a witness for appellant, was as follows: "I will ask you whether or not about two weeks before this shooting occurred you met Charles Smith on the corner of Court and Liberty streets, and whether he did not at that time have a club in his hand, and he asked you where Henry Whitney was, saying that he had struck him and that he was going to kill him?" An objection was made by the State and the court sustained it.   To this decision the appellant excepted, but he made no statement of what he expected to prove by the witness, or what the answer of the witness to the question would be.   It is contended on behalf of the State that no question for the consideration of this court has been properly reserved.

The rule in such cases is said to be well established, and it certainly has been plainly stated in many decisions of this court.   A question on the ruling of a trial court excluding the testimony of a witness can be presented only where a pertinent question has been propounded, and, upon an objection thereto, before a ruling on such objection, a statement has been made to the court of the testimony the

witness would give if permitted to answer such question, and an exception reserved at the time to the ruling of the court. An exception to the decision of the court on the objection to the question alone, without a statement of the facts expected to be proved by the answer of the witness, presents no available error. *LaPlante* v. *State, ex rel.*, 152 Ind. 80; *Rains* v. *State,* 152. Ind. 69; *Board, etc.,* v. *Arnett,* 116 Ind. 438; *Gipe* v. *Cummins,* 116 Ind. 511; *Kern* v. *Bridwell,* 119 Ind. 226; *Deal* v. *State,* 140 Ind. 354, 371; *Morris* v. *Morris,* 119 Ind. 341; *Gunder* v. *Tibbits,* 153 Ind. 591, 607, 608; Elliott's App. Proc., §743; *Lenkenberger* v. *Meyer* (Ind. Sup.), 56 N. E. 913.

The court gave to the jury the following, among other instructions: "Self-defense may be thus defined: If the defendant from this evidence was without fault in bringing on the shooting on East Market street, and in a place where he had a right to be, and was assaulted by said Arthur Braxton, and from said assault, if any there was, this defendant believed, and had reasonable grounds to believe, he was in great danger of losing his life, or receiving great bodily harm from the said Arthur Braxton, then he would be justified in any defense necessary to protect himself, and in that view of the case he should be acquitted. If you, or either of you, have a reasonable doubt as to whether the defendant acted in self-defense when he fired the shots, he should not be convicted." The objection taken to this instruction is thus stated by counsel for appellant: "The court assumes that appellant did bring on the shooting, and also assumes that there was a shooting, while those are the very questions that the jury ought to decide." The facts that several shots were fired by appellant in the course of his encounter with Braxton, and that no one else did any shooting, were shown without contradiction. The appellant admitted, on his examination, that he did the shooting. The court, therefore, had a right to assume that shooting took place. It did not assume that the appellant brought it on.

It was brought on by the conduct of one or the other of the parties which preceded the firing of the first shot. The instruction did not intimate which of the parties was the aggressor. Although appellant did the shooting, his conduct may not have brought it on. That he should have been without fault in bringing on the difficulty which resulted in the shooting of Braxton was a necessary qualification of that part of the instruction which stated to the jury the law of self-defense. The rule generally laid down is that he who by his misconduct creates a breach of the peace is chargeable with the consequences thereof.

The objection made to the ninth instruction given by the court is that it omitted the element of premeditation in its definition of the crime of assault and battery with intent to commit murder in the first degree, and therefore did not justify the conclusion of the court that, if the facts stated in the instruction were established beyond a reasonable doubt, the appellant might be found guilty of the felony charged. Although the words "with premeditated malice" were not used by the court, the necessity of such premeditation as a necessary ingredient of the crime charged was clearly stated, so that the jury could not have been misled to the prejudice of the appellant. If the shooting of Braxton took place under the circumstances detailed in the instruction, such shooting was without adequate provocation, and was deliberately done with premeditated malice. In this connection, it may also be observed that the law as to the existence of premeditated malice as an element of the felony charged was properly given in instruction numbered ten.

Another objection made to this instruction is that the evidence did not authorize that part of it which is in these words: "If you, and each of you, are satisfied beyond a reasonable doubt  *  *  *  that  *  *  said defendant left the other parties to hunt for a revolver." The appellant himself testified that he left the crowd and went into Eng-

lish's Hotel to get his revolver, which he had before that lent to one of the men employed in the kitchen. At least two other witnesses testified that the appellant tried to borrow a revolver at the hotel. In view of this state of the evidence, the court did not go outside of the proof in giving the instruction complained of.

Three special instructions were requested by appellant, but the court refused to give them, and these rulings are assigned as error. We have carefully examined the instructions tendered, and are satisfied that the substance of each, as far as it stated the law correctly, was fully and fairly given in the charge of the court.

The last reason assigned for a new trial was the discovery of new and material evidence after the trial of the cause. The affidavit of the appellant in support of the motion states that since the trial he has discovered that he can prove by one Obed Bean certain conversations which took place between said Bean and Eugene McGinness, and Charles Smith, witnesses introduced by the State, in which declarations were made by McGinness and Smith to Bean contradictory of material testimony given by them on the trial. It is further stated that appellant has discovered since the trial that one Nels Sanders was present when the trouble between appellant and Braxton took place, before appellant went into English's Hotel; that he saw the crowd, of which Braxton was one, hit appellant, and throw rocks at him; that Braxton offered to fight appellant, but the latter said Braxton was too big for him; that after appellant went into the hotel, one of the crowd said: "Let's go down to the market house. He comes past there when he goes home, and we will get him there;" and that the crowd then went to the market house and waited for appellant.

A new trial is never granted upon the ground of newly discovered evidence, where such evidence is intended only for the purposes of impeachment. As the proposed testi-

mony of Bean was of this character, it need not be further considered. *Humphreys* v. *State, ex rel.,* 75 Ind. 469; *Wall* v. *State, ex rel.,* 80 Ind. 146; *Morel* v. *State,* 89 Ind. 275; *Harper* v. *State,* 101 Ind. 109; *Meurer* v. *State,* 129 Ind. 587.

When the case was called for trial, an application for a continuance was made by the appellant, on account of the absence of Nels Sanders, and in the affidavit filed in support of the motion the appellant stated what he expected to prove by Sanders. It appears, therefore, that the appellant knew that Sanders was an important witness for him, and that he was partially informed, at least, as to the facts which could be proved by the absent witness. It is not shown in the affidavit for a new trial why appellant did not learn that Sanders had knowledge of the additional facts disclosed in the application for a new trial, or that any diligence whatever had been used to ascertain what he knew concerning the matters afterwards alleged to have been known by him. In this respect, also, we are of the opinion that the showing made by the appellant for another trial on the ground of newly discovered evidence was not sufficient to meet the requirements of the law in such cases. Besides, the court heard oral testimony on behalf of the State in opposition to the motion, and this evidence conflicted with, and directly contradicted the statements of the appellant in the affidavit filed by him, and the statement of Sanders contained in his affidavit. *DeHart* v. *Aper,* 107 Ind. 460.

Upon a careful review of the entire record, we are convinced that the verdict was right upon the evidence, that a correct result was reached by the court, and that no reason exists for a reversal of the judgment.

Judgment affirmed.