ROBERT L. MORRIS *v*. STATE OF INDIANA.

[No. 1075S286. Filed August 24, 1976.]

*James V. Tsoutsouris*, of Valparaiso, for appellant.

*Theodore L. Sendak*, Attorney General, *Susan J. Davis*, Deputy Attorney General, for appellee.

HUNTER, J.—Defendant-appellant, Robert L. Morris, appeals from his conviction of first degree murder. Upon his conviction appellant was sentenced to life imprisonment. Appellant alleges only one error for our review. He contends that the trial court erred when it overruled his motions to admonish the jury and to strike testimony based upon an alleged violation by the state of a motion in limine.

The state and appellant's counsel stipulated to the following:

"As the Defendant is charged with the commission of the crime of murder in the first degree and whereas it is alleged that subsequent to the commission of said crime the said defendant did return to the home of the decedent and then and there remove the daughter of the decedent, . . . from said home and transport her against her will to a motel in Lake County, Indiana, and then and there have carnal knowledge of her and against her will and without her consent.

"And, whereas the said defendant has been charged in Lake County, Indiana, with the crime of kidnapping and rape in connection with said incident with the daughter of the decedent.

"Wherefore, the State of Indiana agrees not to ask any questions in the direct examination of the witness, . . . referring to an alleged rape which is alleged to have occurred immediately subsequent to the crime of First Degree Murder for which the defendant is now commencing trial."

The trial court granted the motion in limine prohibiting all testimony concerning the rape.[1]

Appellant directs our attention to the following series of questions and argues that this exchange was a violation of the motion in limine:

DEPUTY PROSECUTOR: Q. "Now did there come a time that night when you left your residence?"

WITNESS: A. "Yes."

Q. "Did you leave alone?"
A. "No."

Q. "Did you leave with somebody else?"
A. "Yes."

Q. "And who did you leave with?"
A. "Morris."

Q. "And where did you go after you left your home?"
A. "Motel."

Q. "How did you get to the motel?"
A. "Morris."

Q. "Did you ride in a car?"
A. "Yes."

Q. "What kind of a car or vehicle was it?"
A. "White van."

Q. "Now during this period of time did Mr. Morris have the shotgun with him?"
A. "Yes."

Q. "Now where were you in the car in relation to where Mr. Morris was sitting?"
A. "On the floor."

Q. "In what part of the vehicle?"
A. "In the front of it."

---

1. The case of Burrus v. Silhavy, (1973) 155 Ind. App. 558, 293 N.E.2d 794, explicitly recognized for the first time the use of the motion in limine to provide protection to parties from the often prejudicial effect of the mere asking of a question. The Court of Appeals quoted the following about the purpose of the motion in limine:

"The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or on the rights of the parties to the suit. It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which the motion in limine is intended to reach. . . ." Bridges v. City of Richardson, (1962) 163 Tex. 292, 354 S.W.2d 366, 367.

Q. "From your position could you see the gun or shotgun in the van?"
A. "No."
Q. "Now, . . . do you know approximately what time you arrived at this motel?"
A. "No."
Q. "Can you give me a rough estimate of when it might have been?"
A. "Around 2:30."
Q. "2:30 A.M. on the evening of August 6th, early morning hours of August 6th. (sic)"
A. "Yes."
Q. "Now would you describe what you were wearing when you left your home?"
A. "I had a sheet around me."
Q. "Did you have anything else?"
A. "No."
Q. "Now, did you leave voluntarily?"
A. "No."
Q. "Did Mr. Morris say anything to you to get you to go with him?"
A. "No."
Q. "What happened after you arrived at the motel?"
A. "He took me in."
Q. "He took you in where?"
A. "The motel."
Q. "Into a room?"
A. "Yes."
Q. "And how long were you there?"
A. "Till about 5:30."
Q. "During this period of time that you were in the motel did Mr. Morris have the shotgun with him?"
A. "Yes."
Q. "While you were in the motel room did you have any conversations with Mr. Morris about where your father was?"
A. "I asked him again."
Q. "And what did he say?"
A. "He said he went to a party with some lady."
Q. "Now when you were in the van did you at any time attempt to get out of the van?"
A. "No."
Q. "Was there any reason why you did not get out of the van?"

A. "Yes."

Q. "And what was that?"

A. "I was taped up."

Q. "What parts of your body were taped up?"

A. "My hands and my mouth."

Q. "Did there come a time when the tape was removed from your person."

A. "Yes."

Q. "And where was that?"

A. "In the motel."

Q. "Did there come a time later or earlier that morning that you left the motel room?"

A. "Yes."

Q. "Do you know approximately what time that was?"

A. "Around 5:30."

Q. "Did you leave the motel room with anyone?"

A. "Yes."

Q. "And who did you leave with?"

A. "Morris."

Q. "And where did you go?"

A. "To a school behind my house."

Q. "And how did you get there?"

A. "In the white van."

Q. "Would you tell me what, if anything, you were wearing?"

A. "A pink dress."

Q. "And during this period of time between the time that you left the motel and the time you were dropped off at this school behind your house, did Mr. Morris have the shotgun with him?"

A. "Yes."

Q. "Did you have any conversations when Mr. Morris dropped you off?"

A. "I asked him where my dad was."

Q. "What did he say?"

A. "He said he took care of him."

Q. "Did he say anything else?"

A. "Then he said he was at a party with some lady."

Q. "He said that again. (sic)"

A. "Um-hum."

Q. "... I'm now going to show you what has been marked as State's exhibit number 12, which is a sawed-off shotgun Winchester Model 1200, and ask you to take a look at this."

(State's exhibit 12 was examined by the witness)

"Is this the shotgun that Robert Larry Morris had with him in the early morning hours of August 6th, 1974?"

A. "Yes."

Q. "It looks like the one, correct?"

A. "Yes."

Q. ". . . is the Robert Morris that you testified about here in this court room today?"

A. "Yes."

Q. "Can you point him out to the court and to the jury? Is he the man sitting in the blue jacket to my far right?"

A. "Yes."

The parties in this instance stipulated that no mention would be made of the alleged rape of decedent's daughter by appellant.

As is correctly argued by appellant, evidence of crimes other than that with which one is charged is generally inadmissible. *Franks* v. *State*, (1975) 262 Ind. 649, 323 N.E.2d 221. The state conscientiously avoided any mention of any rape and we fail to find the sexual overtones urged by appellant. No objection was made at trial nor is an argument now made concerning the propriety of the admission into evidence of testimony about the kidnapping. Therefore we need not examine the correctness of the testimony in that light. Because we find that the above-quoted testimony did not violate the trial court's order and since that was the sole ground for objection, it follows that no error occurred in denying appellant's motions.

Having found no basis for reversal, the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Prentice, JJ., concur.

NOTE.—Reported at 352 N.E.2d 705.