ROGER D. LAGENOUR *v.* STATE OF INDIANA.

[No. 277S119.   Filed May 30, 1978.]

*Arthur L. Dillard,* Public Defender, of Paoli, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant was convicted of the offenses of assault and battery with intent to gratify sexual desires, Ind. Code § 35-1-54-4, and kidnapping, Ind. Code § 35-1-55-1 (Burns 1975) both repealed October 1, 1977.

Appellant presents four issues in this direct appeal: (1) denial of appellant's right to confrontation by the trial court's order precluding him from cross-examining the State's witnesses on the subject of prior sexual activities; (2) failure of the State to disclose, pursuant to an order of the trial court, that appellant made an incriminating statement while in custody; (3) propriety of joinder of the two offenses with which appellant was charged for trial; and (4) overruling of appellant's motion *in limine* seeking exclusion of evidence of separate crimes allegedly committed by appellant.

On the evening of April 26, 1976, the prosecuting witness, a sixteen year old girl, accompanied two male friends to the

Colonial Bar in French Lick; she remained outside in their automobile in a parking lot.

Inside the tavern the two friends met appellant and conversed with him. One of the friends told the other to go out to the car and "check on" the girl, but the latter was in an advanced state of inebriation. Appellant volunteered to go out and "take care of" the girl.

Appellant approached and entered the automobile, telling the prosecuting witness that he was going to pick up Timmy, the intoxicated friend. However, he drove instead to a small country lane where he parked, despite the girl's request that he return her to the parking lot. He removed his pants and the girl's lower garments, despite her resistance. Appellant told the prosecuting witness that he was going to "do it to her." When another car pulled into the lane, however, they both replaced their clothing and appellant returned to the parking lot.

Appellant brought Timmy out of the bar and they found the prosecuting witness sitting in the car crying. Other acquaintances from the bar gathered and one girl told the witness appellant's name.

Someone called the French Lick police, and appellant was apparently arrested at the parking lot, although the record is unclear in this regard.

At trial two young women testified that appellant had also made sexual assaults upon them.

JEH testified that appellant abducted her from a patio at a hotel in French Lick where she was attending a Young Republicans convention in August of 1975. He dragged her into the bushes and raped her at knifepoint.

DW testified that as she gave appellant a ride in December of 1975 he began to disrobe, attempted to remove her shirt, and forced her to drive to the same area to which appellant took the prosecuting witness. She jumped out of the car and ran.

Although appellant was charged with crimes arising from these incidents he was not convicted of either; both prosecutions were dismissed by the prosecutor.

## I.

Before trial the State sought and received an order prohibiting appellant from examining the prosecuting witness and the other alleged victims of appellant's sexual assaults as to their prior sexual conduct. The order was based in major part upon the Indiana "Rape Shield Law," Ind. Code §§ 35-1-32.5-1 to 4 (Burns 1977 Supp.). Appellant contested the grant of this order. On appeal he contends that the trial court's order was erroneous for the following reasons: (1) The rape shield law unconstitutionally restricts appellant's cross-examination of the prosecuting witness in violation of the guarantee of the Sixth Amendment and Art. 1, § 13, of the Indiana Constitution, of the right to confront witnesses; (2) The rape shield law does not apply to victims of separate crimes, evidence of which is offered to establish a defendant's identity, nor to the victim of a kidnapping (the prosecuting witness was alleged to be the victim of a kidnapping as well as the assault and battery with intent to gratify sexual desires).

Appellant relies on *Davis* v. *Alaska*, (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, and specifically contends that he was precluded from inquiring into facets of the prior sexual conduct of the prosecuting witness which might show bias or motive for falsely accusing appellant. *Davis* held that the confrontation clause prohibits the state from prosecuting the accused through witnesses whose testimony is sheltered from impeachment by evidentiary privileges, the purpose of which is to further extraneous state interests. The *Davis* court was not concerned with the exercise of a state's power to define the scope of proper impeachment or cross-examination as we are in this case.

The right to confront witnesses granted by the federal and state constitutional provisions relied upon includes the right

of full, adequate and effective cross-examination; it is fundamental and essential to a fair trial. *Pointer* v. *Texas*, (1965) 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; *Montes* v. *State*, (1975) 263 Ind. 390, 332 N.E. 2d 786; *Whitney* v. *State*, (1899) 154 Ind. 573, 57 N.E. 398; *Williams* v. *State*, (1972) 153 Ind. App. 597, 288 N.E.2d 580. In speaking of this right in *Sears* v. *State*, (1972) 258 Ind. 561, 282 N.E.2d 807, said:

> "The right to vigorous cross examination is fundamental to our adversary process, and wide latitude is allowed both sides in a dispute to ask pointed and relevant questions on cross examination in an attempt to undermine the opposition's case. Thus, any doubt as to the legitimacy of a question on cross examination should be resolved in favor of the questioner." 258 Ind. at 563.

We regard the sources of the limitation upon cross-examination here to be the trial court order which was based in part upon inherent power, and the statute operating directly and independently thereof.

Appellant is correct in his contention that the rape shield law does not apply to victims of separate crimes nor to the victim of a kidnapping. However, the trial court's order as to them may be sustained as an exercise of inherent discretionary power to exclude and admit evidence and to grant motions *in limine*. *Morris* v. *State*, (1976) 265 Ind. 212, 352 N.E.2d 705; *Smith* v. *State*, (1969) 252 Ind. 425, 249 N.E.2d 493; *Bernard* v. *State*, (1967) 248 Ind. 688, 230 N.E.2d 536; *Morris* v. *State*, (1977) Ind. App., 360 N.E.2d 1027; *Burrus* v. *Silhavy*, (1973) 155 Ind. App. 558, 293 N.E.2d 794. The exercise of such authority must be in accord with due process and the right of confrontation. *Alford* v. *United States*, (1931) 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. The primary issue before us is whether the total limitation prevented appellant from conducting a full and effective cross-examination of the three women, in violation of the constitutions. Appellant has relied upon the general contention throughout that the limitation deprived him of "rea-

sonable latitude in effectively cross-examining the witness . . . in eliciting facts concerning their prior sexual conduct for the purposes of revealing their reputations for veracity, possible biases, prejudices or ulterior motives." There is no suggestion made of the existence of any line of questioning related to any of the witnesses which could have been followed in the absence of the limitation. There is no suggestion made that any of the witnesses might have an attitude or inclination which could be the product of prior sexual conduct. Appellant's contention that he was deprived by the order and statute from effectively cross-examining the three witnesses cannot be sustained. We would not be understood as requiring counsel to make an offer to prove to substantiate a confrontation claim of this sort, as any such requirement would be contrary to present law, *Strickland* v. *State*, (1977) 265 Ind. 664, 359 N.E.2d 244. What we do require is the showing of an actual impingement upon cross-examination.

## II.

Appellant filed a number of discovery motions seeking among other things, disclosure of any confessions or statements made by appellant. The motions recited reliance on *Brady* v. *Maryland*, (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.E.2d 215, but the court treated them as addressed to its inherent power to order discovery in criminal prosecutions. Appellant was entitled to the order requested absent a showing by the prosecution of a paramount interest in non-disclosure. *Sexton* v. *State*, (1972) 257 Ind. 556, 276 N.E.2d 836. The trial court granted the motion and ordered the prosecutor to produce such statements. The State in response to the order answered that appellant had made no statements, but that he had signed a *Miranda* rights waiver form which had been "misplaced."

In his motion to correct errors and supporting affidavit appellant alleged that:

(1) after trial appellant's attorney obtained from law en-

forcement officials a copy of the waiver form and a memorandum, alleged to be in the handwriting of the prosecuting attorney, evidencing a statement made by the appellant on the night of his arrest;

(2) the State had "blatantly disregarded" the trial court's discovery orders, submitted "false and fictitious" responses, and "could not deny knowledge of the . . . statement";

(3) appellant had been denied a fair trial by the omission of the State to disclose the statement.

The memorandum recited that appellant had initially denied any knowledge of the incident but eventually admitted to fondling the prosecuting witness, although he denied removing her from the parking lot.

The prosecuting attorney filed a counter-affidavit averring that the omission to produce the statement and his denial of its existence was inadvertent and was due to mistake, confusion, and failure of memory on his part. The counter-affidavit was sticken on appellant's motion as untimely filed. The trial court nonetheless denied appellant relief on this ground and such denial is claimed as error here.

Where as here it is first established at the motion to correct error level that the State did not comply with an order to produce, the trial court must determine whether a new trial should be granted. In making that decision, the court will consider whether the breach was intentional or in bad faith, and whether appellant suffered prejudice thereby. *Johns* v. *State,* (1968) 251 Ind. 172, 240 N.E.2d 60. In so deciding he was bound in this case to accept the factual allegations in appellant's affidavit as true in that they stood uncontradicted before him, however, he was not bound by the general allegations of intentional misconduct and substantial prejudice in it, as they were mere opinions and conclusions. *Finger* v. *State,* (1973) 260 Ind. 148, 293 N.E.2d 25; *Scharbrough* v. *State,* (1968) 249 Ind. 316, 232 N.E.2d 592.

The specific facts averred by appellant are: (1) that the prosecutor did not disclose the memorandum of appellant's statement; and (2) that the memorandum was in the hand-writing of the prosecutor.

The statement attributed to appellant was highly inculpatory and yet the State did not use it at trial. The State did inform appellant during the pre-trial period that a ▮ *Miranda* waiver had been made but evidence of it had been misplaced. Such a waiver is ordinarily the precursor of a statement by the accused. The statement was short and contained no exculpatory information. Since the State did not use the admission against appellant he had no need of the memorandum for purposes of preparing his defense against it. Appellant has pointed to no specific prejudice flowing from non-production. The trial court was justified in concluding that the failure to comply was neither intentional nor so prejudicial as to warrant reversal.

Appellant relies on *Murphy* v. *State,* (1976) 265 Ind. 116, 352 N.E.2d 479, for the proposition that "criminal defendants have a right to discovery, regardless of an argument of harmless error on appeal." This argument misconstrues *Murphy* and the concept of harmless error, which presupposes the denial of a right. In *Murphy* the defendant was wrongfully denied permission to depose seven prosecution witnesses. The court held that even though the depositions sought might have disclosed no exculpatory evidence, the shielding of so large a portion of the State's case from defense scrutiny could not help but prevent effective preparation of a defense. The same cannot be said of the failure of the prosecutor to disclose this statement, which appears to be a harmless irregularity which would not entitle appellant to a new trial.

### III.

Appellant was charged with kidnapping and assault and battery with intent to gratify sexual desires in separate in-

formations. These informations were joined for trial on the State's motion and over appellant's objection. Appellant conceded that Ind. Code § 35-3.1-1-10(b) (Burns 1975) provides that crimes alleged to arise from connected acts in a single scheme or plan should be joined except where the court "in the interests of justice, orders that one or more of such crimes be tried separately." He contends that the interests of justice required separate trials for the two charges because the rape shield law, discussed in Part I, applied to the assault charge but not to the kidnapping, see Ind. Code § 35-1-32.5-1 (Burns 1977 Supp.). Therefore, he argues, appellant was foreclosed by the statute from introducing evidence of the past sexual conduct of the prosecuting witness in his kidnapping defense, whereas had separate trials occurred he could have employed such evidence.

As explained in Part I of this opinion, there has been no impingement shown upon the means of impeachment. The order joining the information for trial was proper.

## IV.

Appellant filed pre-trial motions seeking exclusion of evidence of separate and unrelated criminal conduct alleged to have been committed by appellant. These motions were overruled. At trial the State produced the witnesses JEH and DW whose testimony is summarized above. This testimony was received without objection. On appeal this evidence is challenged as irrelevant and prejudicial and error is assigned to the overruling of appellant's motions which were designated as motions *in limine*.

The State counters that the evidence sought to be excluded by a motion *in limine* must be objected to at the time of its introduction at trial for any error in the denial of the motion to be preserved. This proposition is correct. *Morris* v. *State*, (1977) Ind. App., 360 N.E.2d 1027; *Marsh* v. *Lesh*, (1975) 164 Ind. App. 67, 326 N.E.2d 626. Appellant's motion sought to absolutely prohibit the

State from using this evidence. For instructive purposes it should be noted at this point that it is not the office of a motion *in limine* to obtain a final ruling upon the ultimate admissibility of evidence as was sought by appellant, but is rather to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself. *Baldwin* v. *Inter City Contractors Service, Inc.,* (1973) 156 Ind. App. 497, 297 N.E. 2d 831.

Appellant's motion was not a motion *in limine,* but was a pre-trial motion to suppress the evidence on relevancy grounds, which we believe to be within the inherent authority of the trial courts to entertain. However, we need not delve into the distinctions between these types of motions for our purposes here. The requirement that a party object at trial to the introduction of evidence in order to preserve a ruling of the trial court denying a pre-trial motion to suppress has been the subject of recent litigation, and it has been reaffirmed. *Pointon* v. *State,* (1978) 267 Ind. 624, 372 N.E.2d 1159. While the author of this opinion does not ascribe to the application of that rule under the circumstances of this case, the majority of this Court has determined otherwise. The issue with regard to the admission of evidence of other offenses was not preserved for appeal by an appropriate objection at trial and is not therefore before us.

Appellant has responded in his reply brief that Ind. Code § 35-4.1-2-1(b) and (c) (Burns 1975) govern the motion practice which occurred here. Such provision provides:

"(b) Except as otherwise expressly provided in this code of criminal procedure, an application to the court for an order shall be by motion. A motion other than one made during a trial or hearing shall be in writing unless the court permits it to be made orally. It shall state the grounds upon which it is made and shall set forth the relief or order sought. It may be supported by affidavit.

(c) Except as otherwise expressly provided in this code of criminal procedure, whenever the defendant files a motion pursuant to any provision of this code of criminal procedure, the state may file an answer thereto. If no answer is filed by the state, all issues of fact and law raised by such motion shall stand at issue and the court shall proceed."

Appellant contends that the issues raised by the motion were before the court for a ruling and that such ruling under general law would be conclusive and there was therefore no waiver here. We find nothing in this statute which could be considered as relieving a party of making a contemporaneous objection at trial to preserve the pretrial ruling for appeal. It structures the motion practice and tells the court when to rule. The requirements for preserving the ruling made here stem from the separate rule requiring the contemporaneous objections and not general law.

The convictions of appellant are therefore affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 376 N.E.2d 475.