Thelma Josephine ALLEYN, Appellant,

v.

STATE of Indiana, Appellee.

No. 580S138.

Supreme Court of Indiana.

Nov. 18, 1981.

Walter C. Dietzen, Steven C. Smith, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Alleyn was convicted of voluntary manslaughter at the conclusion of a jury trial in Madison Circuit Court on November 8, 1979. She was sentenced to twenty (20) years in prison and also fined in the sum of one hundred ($100.00) dollars and costs.

The crime in question occurred on July 5, 1978, at the home of appellant's mother, Marie D. Miller. Mrs. Miller was 68 years of age at the time. Appellant and Mrs. Miller had been repairing the front porch when Mrs. Miller struck her head on a table. A fight ensued and Mrs. Miller fell to the ground, cutting her head. Later, Mrs. Miller went to the basement to change her clothes and appellant followed her. Daughter and mother fought and appellant left her mother lying on the floor. Later, appellant discovered that her mother was dead. Appellant left the house without notifying the police. Six days later she returned with her daughter and the police were notified at that time.

Five errors are asserted by appellant, concerning: (1) whether the trial court erred in sustaining the State's motion *in limine* to exclude part of the testimony of Dr. Rodney Caudill, a psychiatrist; (2) whether error was committed in allowing the testimony of a witness who allegedly had been hypnotized without notifying the defense that the witness had been hypno-

tized; (3) whether the trial court erred in denying appellant's petition for psychiatric examination as part of the presentence investigation; (4) whether the trial court had discretion in extending the sentence; and (5) whether it was error to deny appellant's petition for an appeal bond since appellant alleged indigency.

## I.

Appellant first asserts that the trial court erred in refusing to allow the psychiatrist, Dr. Caudill, to testify about the examination of the appellant. Appellant originally entered a plea of insanity on May 4, 1979, and the trial court appointed two psychiatrists, Dr. Caudill and Dr. Fedor, to examine her. Both doctors did so and submitted written reports to the court. On October 30, 1979, the insanity plea was withdrawn before the start of the trial.

When Dr. Caudill was called to the witness stand, the State made an oral motion *in limine*, prior to any testimony, to exclude the doctor's proposed testimony. A hearing was held outside the presence of the jury and the attorneys offered their reasons for including or excluding the proposed testimony. The trial court directed the witness to testify only as to his expert opinion about the possible effect a concussion might have on the behavior of a person such as the victim after she struck her head on the table.

Appellant contends that the testimony excluded by the sustaining of the oral motion *in limine* is admissible on two grounds: (1) the testimony of Dr. Caudill regarding appellant's mental state was relevant on the issue of whether appellant knowingly killed her mother; and (2) the declarations made to Dr. Caudill during the psychiatric evaluation were offered as rehabilitation of appellant's prior inconsistent statements as to what happened on the day of the murder.

■ The State counters these contentions by stating that this issue is not properly preserved for the purposes of this appeal. The State is correct in pointing out that a court's ruling sustaining the motion *in limine* does not eliminate the necessity of an in-trial offer. *Niehaus v. State*, (1977) 265 Ind. 655, 359 N.E.2d 513. This Court also said in the case of *Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475:

> "For instructive purposes it should be noted at this point that it is not the office of a motion *in limine* to obtain a final ruling upon the ultimate admissibility of evidence as was sought by appellant, but is rather to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself."

*Id.* at 450, 376 N.E.2d at 481.

■ A motion *in limine* holds evidence in abeyance until the trial court can make its ruling. After Dr. Caudill testified about the possible effect a concussion might have had on the victim, counsel for appellant should have approached the court and asked permission to have Dr. Caudill testify further about the proposed evidence excluded by the oral motion *in limine*. The trial court, not this Court, should decide whether or not the evidence was offered for self-serving or rebuttal purposes because the trial court is in the best position to weigh the proposed evidence and to determine whether or not such evidence is admissible. Counsel's failure to attempt to have this testimony introduced after Dr. Caudill testified has resulted in the waiver of this issue on appeal.

## II.

■ Appellant also argues that it was error for the State to hypnotize a witness without first notifying the defense that the witness had been hypnotized. In the case at bar, the eyewitness, Marsh, saw a portion of the fight between appellant and the victim. The appellant argues that the State had the duty to inform the defense about the use of hypnosis on the eyewitness so the defense could effectively attack his credibility on the stand.

However, this Court will not decide whether or not sufficient notice was given to the appellant's attorneys. A major flaw in appellant's argument is that she cannot point to any harm or prejudice to her because of the alleged use of hypnosis. There is nothing in the trial record or appellant's brief upon which this issue can be determined by the Court. Appellant simply asserts that the hypnosis used on Marsh tainted his testimony, which, when combined with the lack of disclosure about the hypnosis, resulted in fundamental error. Appellant's argument fails because the record does not indicate that Marsh had, in fact, been hypnotized. There were no facts alleged or proven to support the conclusions of counsel. An error alleged but not disclosed by the record is not a proper subject for review. *Banks v. State*, (1980) Ind., 402 N.E.2d 1213. The appellant has not presented this Court with a record sufficient to permit review, *Mendez v. State*, (1977) 267 Ind. 309, 370 N.E.2d 323, and it is the duty of an appellant to make a proper record. *Pulliam v. State*, (1976) 264 Ind. 381, 345 N.E.2d 229; *Buchanan v. State*, (1975) 263 Ind. 360, 332 N.E.2d 213.

This Court stated in *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105:

"... errors must be 'accompanied by a statement of the facts and grounds upon which the error is based,' Ind.R.Tr.P. 59 (B). This rule's purpose is to allow the trial court the first opportunity to determine or remedy contended issues."

Appellant's attorneys missed their opportunity to put in the record the alleged use of hypnosis and its possible effect on Marsh's testimony. The trial court set a hearing on appellant's motion to correct errors for February 29, 1980, but on February 22, 1980, counsel for appellant informed the court that appellant did not wish to have a hearing. At that hearing it would have been possible for counsel to subpoena both Marsh and Sergeant Vandagriff, a hypnotist technician, and propound questions to support appellant's conclusions as set forth in the motion to correct errors. At this point it is mere speculation as to the effect the hypnosis, if Marsh was indeed hypnotized, had on his testimony and how this revelation could have influenced the jury. This Court refuses to rule on speculative issues. Also, attorneys for appellant are wrong when they state that Marsh's testimony was the only strong piece of evidence offered to convict the appellant. Marsh's testimony was corroborated by appellant and her daughter. Appellant's daughter testified that her mother told her about the fight at Mrs. Miller's home, and defendant herself took the stand and told the jury about the fight. Appellant's testimony placed her at Mrs. Miller's house at the time Marsh witnessed the struggle.

To the extent this Court is able to address the merits of appellant's contention, we find no trial court error.

### III.

After the trial was concluded, appellant filed a petition for psychiatric examination prior to sentencing. The relevant Indiana statute, Ind. Code § 35–4.1–4–11 (Burns 1979) reads as follows:

"The court may order that the convicted person undergo a thorough physical or mental examination in a designated facility as part of the presentence examination...."

■ It is apparent from the language of the statute that the ordering of either a physical or mental examination is within the discretion of the trial court; only abuse of that discretion will demand reversal. Nothing in the record indicates that the trial court judge abused his discretion by not ordering a psychiatric examination. In addition, appellant's third issue fails because appellant did not support with any discernible argument and cited authority for her contention that the trial judge abused his discretion in refusing to order a psychiatric examination; therefore, this issue on appeal has been waived. *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411; *Mosley v. State*, (1977) 266 Ind. 675, 366 N.E.2d 648.

### IV.

■ The appellant was convicted of voluntary manslaughter, Ind. Code § 35–42–

1–3 (Burns 1979). The penalty for voluntary manslaughter, a Class B felony is fixed by statute, Ind. Code § 35–50–2–5 (Burns 1979):

"A person who commits a Class B felony shall be imprisoned for a fixed term of ten [10] years, with not more than ten [10] years added for aggravating circumstances or not more than four [4] years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars [$10,000]."

Appellant argues that there were not sufficient aggravating circumstances present to extend the sentence to the maximum of 20 years.

The trial judge is, by statute, provided certain criteria for sentencing. Ind. Code § 35–4.1–4–7 (Burns 1979) provides:

"(a) In determining what sentence to impose for a crime, the court shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person.

(b) The court may consider these factors as mitigating circumstances or as favoring suspending the sentence and imposing probation:

(1) The crime neither caused nor threatened serious harm to persons or property, or the person did not contemplate that it would do so.

(2) The crime was the result of circumstances unlikely to recur.

(3) The victim of the crime induced or facilitated the offense.

(4) There are substantial grounds tending to excuse or justify the crime, though failing to establish a defense.

(5) The person acted under strong provocation.

(6) The person has no history of delinquency or criminal activity, or he has led a law-abiding life for a substantial period before commission of the crime.

(7) The person is likely to respond affirmatively to probation or short-term imprisonment.

(8) The character and attitudes of the person indicate that he is unlikely to commit another crime.

(9) The person has made or will make restitution to the victim of his crime for the injury, damage, or loss sustained.

(10) Imprisonment of the person will result in undue hardship to himself or his dependents.

(c) The court may consider these factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

(1) The person has recently violated the conditions of any probation, parole, or pardon granted him.

(2) The person has a history of criminal activity.

(3) The person is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility.

(4) Imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime.

(5) The victim of the crime was sixty-five years of age or older.

(6) The victim of the crime was mentally or physically infirm.

(d) The criteria listed in subsections (b) and (c) of this section do not limit the matters that the court may consider in determining the sentence."

The record of the proceedings in this matter did not contain a complete written record of the trial court's reasons for selecting the sentence imposed. We remanded the cause on July 13, 1981, requesting the trial court to make written findings that support its selection of the twenty (20) year sentence. The findings and statements are made *nunc pro tunc*, effective the date of the sentencing hearing.

The trial court listed the following as aggravating factors: the victim was the appellant's mother; the victim was over sixty-five (65) years of age; the killing was brutal, heinous, and vicious in nature; and that the appellant is in need of rehabilitation and a penal facility is the best source

of said rehabilitation. In addition, the trial judge felt that a reduced sentence would depreciate the serious nature of the crime. By disclosing these reasons, the trial court complied with the mandate set forth in *Gardner v. State*, (1979) Ind., 388 N.E.2d 513. This Court does not find that the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R.App.Rev.Sen. 2(1).

### V.

 Appellant's final issue concerns the denial of the appeal bond. After sentencing, appellant filed a petition for an appeal bond. A hearing was held and the trial court denied the petition. Appellant alleges that it was error where the trial court's policy was to deny bond when the party pled indigency and received counsel at the public's expense but later proposed to spend money to get out on bond pending appeal. Appellant argues that denial of the bond on grounds of indigency is a violation of equal protection under *Griffin v. Illinois*, (1955) 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. The facts in that case differ greatly from the case at bar. *Griffin* held that an indigent person has the right to obtain a transcript of his trial, at the State's expense, in order to appeal his conviction. Appellant would have us believe that denial of an appeal bond because of indigency is of the same importance as denial of the trial record on the same grounds. This argument is not convincing. In addition, the record discloses that appellant's attorney suggested that appellant's family would put up money for the bond. The trial court judge, after considering the entire situation, still denied the petition.

Ind. Code § 35–4–6–1.5 (Burns 1980) reads as follows:

> "[T]he person may be admitted to bail pending appeal at the discretion of the court in which the case was tried...."

The record does not show that the trial court judge abused his discretion in refusing to set bond. The State is correct in stating that there is no constitutional right to bond pending appeal. *Keys v. State*, (1979) Ind., 390 N.E.2d 148. This court also agrees with the State that denial of an appeal bond does not demand that a new trial be granted. The relief requested is not proper for the type of error alleged. Such denial has no bearing upon the question of whether or not the appellant should be granted a new trial. Regardless of the questions presented, this issue is made moot by the handing down of this opinion.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.