Jerome COLEMAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 181S22.

Supreme Court of Indiana.

March 25, 1982.

Robert E. Stochel, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Carolyn M. Brawner, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Jerome Coleman, the appellant, was charged by an information with attempted murder, a class A felony (Ind.Code § 35–42–1–1; Ind.Code § 35–41–5–1). He was convicted after a jury trial and sentenced to thirty years' imprisonment. This appeal

from the denial of his motion to correct errors raises two issues:

(1) Whether the trial court denied the defense the opportunity to cross-examine State's witnesses regarding their credibility.

(2) Whether it was reversible error for the trial court to refuse to grant the defendant's motion for a mistrial.

The evidence supporting the verdict discloses that Larry Nash and three other men, including the defendant, drove in Nash's car to Gary from Chicago. Upon reaching Gary, the defendant began driving the car. He drove into an alley and stopped the car, ordering Nash out at gunpoint. Nash emerged from the car and his companions shot him in the head, neck and arm and then fled. Nash was found by Gary police and told them who had shot him.

## I.

The defendant claims that on two occasions during trial he was denied his right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, to cross-examine witnesses against him. The first occasion was during the cross-examination of Larry Nash, the complaining witness. Defense counsel was questioning Nash about Kim McGinnis, Nash's common-law wife, who was also a State's witness. Counsel asked: "Have you ever had any altercations with Miss McGinnis where you inflicted bodily injury on her?" The trial court sustained the State's objection that the question was irrelevant. Nash had already testified that "I didn't prefer for her not to testify."

The defense argued at trial that it was attempting to determine if Nash had any influence on McGinnis' testimony, "by either coercing her directly or causing her to have ulterior motives in testifying."

The second occasion was during the cross-examination of McGinnis. Defense counsel asked: "Has Mr. Nash ever struck you?" The State objected on the ground of irrelevance, and the court sustained the objection. Cross-examination resumed and the following colloquy took place:

"Q. Did you ever indicate to Mr. Nash that you did not want to testify in this matter?

A. Yes.

Q. What was his reaction?

BY THE STATE: Objection. Irrelevant.

BY THE COURT: Sustained."

Defense counsel had already asked McGinnis: "Are you testifying here of your own free will?" McGinnis answered that she was.

The defendant argues that the rulings on cross-examination impermissibly interfered with the defense attempt to impeach the witnesses' credibility, relying on *Davis v. Alaska,* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, and *Lagenour v. State,* (1978) 268 Ind. 441, 376 N.E.2d 475.

*Davis* involved a juvenile witness whose testimony against the defendant was sheltered from impeachment by a state policy protecting the confidentiality of juvenile offenders' records. The Court held that the right of cross-examination is superior to a state's interest in protecting juvenile offenders.

In *Lagenour,* we said:

"[t]he *Davis* court was not concerned with the exercise of a state's power to define the scope of proper impeachment or cross-examination as we are in this case." 376 N.E.2d at 478.

We held in *Lagenour* that the trial court's order barring the defendant from questioning the prosecuting witness and two other alleged victims of his sexual assaults about their prior sexual conduct, while not within the scope of the "rape shield" law, was a matter within the trial court's sound discretion and was not an impingement upon cross-examination.

Regarding the claim in this case that the cross-examination right was denied in the questioning of Nash, the defense had already elicited the testimony that Nash wanted McGinnis to testify against the defendant. The question about inflicting bodily injury on McGinnis was properly excluded as irrelevant and the defense did not pursue a more specific inquiry.

■ Regarding the claim that the cross-examination right was denied in the questioning of McGinnis, the defense had already elicited the response that she was testifying voluntarily. The question objected to was properly excluded as irrelevant since it asked McGinnis to reveal whether she had ever been struck by Nash during her five-year relationship with him. Defense counsel did not pursue a more specific line of inquiry. There was no impingement on the right to cross-examine the witnesses.

## II.

The next claim concerns two instances during trial when the complaining witness made what is argued are references to the defendant's prior criminal activity. The first incident occurred when the following colloquy took place on direct examination:

"Q. And what were you going to do—what was your purpose in getting into the car.

A. Well, we were going hustling to make some money."

The direct examination had already established that the defendant was in the car.

The defense objected and moved for a mistrial, which was denied. The jury was not admonished to disregard the statement. The defendant argues that the statement, coupled with the victim's admitted involvement in auto theft, was a reference to the defendant's prior criminal activities and that the motion for mistrial should have been granted.

■ We cannot agree that the statement at issue, "Well, we were going hustling to make some money," clearly implicated the defendant in other crimes, as the defendant claims. The record shows that when Nash admitted that he made his living by stealing cars, he in no way implied that the defendant was also a car thief.

Since the statement did not refer to prior, irrelevant, criminal activity, neither an admonition nor a mistrial was called for.

The second claimed reference to the defendant's prior crimes occurred in the following colloquy during direct examination of the victim:

"Q. Now in your statement which you gave to Officer Stack, of the Gary Police Department, you indicated that somebody in the car-chopping business could make up to twenty thousand dollars ($20,000) a day, if you cut that many cars up. Do you remember making twenty thousand dollars ($20,000) a day?

A. No. He was saying, 'How much money could you make?' I didn't want to say, 'All you want.' I just gave him a good estimate of how much money you can make.

Q. Could you give us an estimate as to the most money you have ever taken in a day doing that?

A. Seven thousand ($7,000) dollars. It wasn't mine altogether.

Q. What do you mean by that?

A. Well, I and Jerome Coleman . . . ."

The defense objected and moved for a mistrial. The trial judge, out of the hearing of the jury, said that it was improper for the prosecution to go into other criminal acts in which the defendant may have been involved. The jury returned and the direct examination continued without any further reference to the defendant's prior crimes. After the State completed its case-in-chief, the trial court made the following statement to the jury:

"[D]uring the examination of Larry Nash, reference was made to the defendant's participation in a car theft operation. That is not relevant to the matter now before the court. I am admonishing you to disregard that entirely. That is not in any way to enter into your deliberations here on the matter before the court. You all understand that?"

The jurors indicated that they understood the admonition.

The defendant argues that the admonition would not have been sufficient even if it had been given at the time Nash made the statement; therefore it is even more clearly inadequate, having been given after the State's case ended.

 Assuming, as the trial court did, that the complaining witness' remark was specific enough to amount to a reference to prior crimes committed by the defendant, we find that the admonition, even though made some time after the inadmissible statement came in, was sufficient to cure any prejudice. In determining when this Court must override the determination of a trial judge that an admonition suffices to cure the prejudice engendered by an inadmissible remark, we consider the probable impact of the irregularity on the verdict. "We require a high level of assurance that there was no residuum of prejudice left after the jury was admonished." *Davis v. State*, (1981) Ind., 418 N.E.2d 203, 205. In *Davis*, the jury heard a crime scene technician testify that the reason he came to the scene of a robbery a second time was that:

"A person had been apprehended at the address on Henning. The general description of this person was close to the description that had been given by [the victim of the robbery charged]. We thought it to be a good idea to take this person by to see if the two might have been the same person on both offenses."

We held that, in light of the vagueness of the reference to another offense, the admonition to the jurors immediately following a motion for a mistrial to disregard the answer, and the trial judge's polling of the jurors to determine if they understood the admonition, the testimony could not have affected the verdict.

In the present case, the reference to Jerome Coleman, the defendant, in the witness' answer during direct examination was even more vague as a reference to a prior crime than the crime scene technician's answer in *Davis*. The admonition to the jury, although it did not follow the inadmissible remark immediately, was sufficient to assure that the verdict was not affected by the arguably inadmissible statement.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.